Statement of the Case.
NICHOLLS, J.
The petition of the plaintiff alleges: That she had been married, since February, 1906. That at the time of the filing of suit one child, issue of said marriage, namely, Francis Presley Raymond, was born, and since the filing of the suit plaintiff: has given birth to a second child, namely, Celia Delsa Raymond. That for the-first month of her marriage she and her husband went housekeeping on Milan street, in this city, and that thereafter her said husband took her to the home of his mother,. Mrs. T. L. Raymond, at No. 7037 Elm street,, in this city, and that whilst there her baby was born.
“That she and her said husband resided with his mother and father and family for a year or more, and that during that time her life was made miserable by the cruel and inhuman treatment of her said husband and of the members of his family, with his knowledge and. consent, and that her life was made a torment and a burden by reason of the outrages perpetrated upon her.
“That after the birth of her said child, and. *127 against her wish, and contrary to the advice of the attending physician, the said child was taken from her, although she was fully capable of caring for and attending to it, and consigned to the care and custody of her husband’s mother, who raised it upon the bottle and cared for its every want, and kept it in her own room, notwithstanding your petitioner’s entreaties and supplications. That your petitioner was not allowed to care for her said child, nor to see same, except upon certain occasions, nor to nurse and fondle it, nor to have it with her and by her side nor even in the same room with her at night.
“That during all this time your petitioner’s mother and sisters and brother and family were not allowed to call and see her and her child, and were telephoned to stay away by members of her husband’s family, with his knowledge and consent, and notwithstanding your petitioner’s entreaties to him. That finally your petitioner’s family, seeing her misery and unhappiness, and with a view of adjusting, if possible, the breach between her and her husband, sought legal advice, and after consultations between the attorney employed by her family and her husband and his attorneys an understanding was arrived at as follows:
“That your petitioner and her husband would take a trip, and leave the child with the mother of petitioner’s husband. That upon their return to New Orleans in the month of October, 1007, her said husband would secure quarters away from the home of his mother, and that the child would be brought to the new home established by them, there to be placed in the care and custody of your petitioner.
“Your petitioner further alleges: That she and her said husband took the trip agreed upon as above stated, but that the balance of the agreement was never lived up to by him. That they were gone for two weeks, which was spent by them on the Gulf coast. That at the end of that time your petitioner’s mother-in-law came to get her husband, and that she returned with them to New Orleans. That your petitioner and her husband resided at the Grüne-wald Hotel upon their return for two days and two nights. That at the end of that time her husband told your petitioner that all their money would go if they kept on living in this manner, and that it would be advisable for them to return and live with his mother. Your petitioner agreed to this, thinking that perhaps this conciliatory measure would win over his people, and that she would receive from them belter treatment. Your petitioner alleges that conditions did not change upon her return to her mother-in-law’s house, and that she was not given the care and custody of her child, for which her mother’s heart was aching, and as her husband had agreed; that, on the contrary, the child was kept away from her, and that her husband’s mother had full charge and control of it; that she complained to her husband, but without redress; that after one more week of humiliation, misery, and unhappiness, and of constant taunts and quarrels and insults on the part of her husband’s family to her, she and her husband left her mother-in-law’s house, and went housekeeping on Milan street; that she stayed there with him for three or four months; but that during all that time she was deprived of the care and custody of her child and of the solace and happiness which its possession would have brought her; that the child was allowed to stay with petitioner’s mother-in-law, and, notwithstanding her entreaties to her husband, he took no steps to live up to the agreement made by him, and obtain for her possession of her child. Your petitioner alleges that finally about Christmas, 1907, her husband took up to live again with his mother; that she stayed there one day and one night; that on the said night she refused positively to remain in the home of her mother-in-law, and demanded possession of her child, but that her husband paid no attention to her entreaties and- requests, but after a quarrel with her struck her a blow in the face.
“Your petitioner alleges that on the following morning she left and sought refuge at her mother's home, Mrs. Widow George Delsa, residing at 1014 North Dorgenois street. Your petitioner further alleges that she remained at her mother’s home about one month, apd that she and her family sought to have the differences between herself and her husband adjusted by the intermediary of the attorneys whose services had formerly been retained for that purpose; that her husband finally consented to live up to the agreement he had originally made, and that she went to live with him again on Milan street; that her husband’s mother and sister came to live with them and brought her child to her; that her mother-in-law and sister-in-law were only to stay two weeks upon the pretext that it would take her that long to learn to care for the child; that this occurred in the early part of January, 190S; that conditions did not change; that she was practically a strauger in her own house, and denied the care and custody of her child; that, under pretext that it interfered with her husband’s rest at night to have a child in the room with him, her child was given over in the control of her husband’s mother, who cared for it and kept it in her room night and day; that she was virtually denied the use of part of the house, end only went in the rooms occupied by her mother-in-law and sister-in-law when she went to caress the child; that she was not spoken to by her husband’s mother and sister, only when the forifier quarreled with her; that her husband wrote to her mother that he did not wish her and her family to call and see petitioner; that, notwithstanding petitioner’s remonstrances, her husband would do nothing to better her "position and her surroundings, and said that whatever his mother did was right. Your petitioner alleges that on Saturday, February 8, 1908, her husband left the house and did not return until the next day, Sunday, February 9, 1908, at 8 o’clock p. m., *129 and that on Monday, February 10, 1908, he again left at about 8:30 o’clock p. m., and was gone for the whole week, and that his brother, Reginald Raymond, came to live at the house with her mothor-in-law and her sister-in-law about this time, viz., Saturday February 8, 1908. Your petitioner’s husband’s father told her that he — her husband — was not coming back any more, and-that he had told him to so inform your petitioner, and had instructed him to attend to the house.
“Your petitioner further alleges that on Sunday, February 16, 1908, at about 3 o’clock p. m., her husband came to the house, and informed her that he had made up his mind not to stay there any more; that the house was too small for the baby; that, if she (petitioner) did not want to go, she could stay there, but that he would take the baby to his mother’s house, there to live with him and his family.
“Your petitioner entreated him not to do so, but he told her his mind was made up, and your petitioner told him she positively refused to consent to go to live with his mother, or to permit him to take her child there to live apart from her. Your petitioner further alleges that her said husband left about 8:30 o’clock p. m., and that she does not know whether he returned that night or not, as during his absence of one week from the house his family had removed his bed to the front room of the said house.
“Your petitioner alleges that on Monday morning, February 17, 1908, her husband came to the house and asked petitioner if she was ready to go, which petitioner refused to do; ■that besides her husband her mother-in-law, father-in-law, sister-in-law, and brother-in-law, Reginald Raymond, were there, and that they were ready to leave the house, and that a carriage was before the door; that her husband took the child, which had slept in her mother-in-law’s room as usual, and started for the carriage with it; that your petitioner grasped her child, and endeavored to take it from her husband’s arms; that thereupon her brother-in-law, Reginald Raymond, pushed 'her violently and threw her to the ground; that she was bruised and hurt, and, when she again attempted to rise, he pushed her down again, and in the meanwhile her mother-in-law, father-in-law, sister-in-law, together with the child, drove off in the carriage, and her husband and his brother walked away, and left her bruised and broken-hearted, crying for her child before her desolate and abandoned home.
“Your petitioner further alleges that she remained in the said house, and that later her husband came and wanted to remove therefrom all the furniture, and that, upon refusing to allow him to do so, he about the hours of 6:30 o’clock p. in. on said 17th day of February, 190S, and whilst darkness was settling upon the earth, knocked off and destroyed all the locks of said premises, leaving her in the said house in an insecure condition, a prey to fear, consternation, and despair.
“Your petitioner alleges that during the two years of her married life above recited her said husband on several occasions struck her, and often quarreled with and abused her; that he sanctioned all that his mother did, and made no attempt to secure for her the care and custody of her child, 'but approved of and sanctioned the keeping of the child of petitioner by her mother-in-law; that he knew the treatment received by petitioner at the hands of his mother and her family, of the quarrels she was subjected to, of the taunts and insults she received, of the humiliation she was encompassed with, and of the treatment her family received, and that, notwithstanding petitioner’s entreaties, he made no attempt to better conditions or to live up to the obligations assumed by him under the marriage contract. Your petitioner alleges that she, on the contrary, has made every effort and endured every sacrifice to restore peace and harmony between her husband and herself, and make their life happy and contented.
“Your petitioner alleges that the cruel and inhuman ill treatment above recited, received by her, and the outrages endured by her at the hands of her husband, and the misery, humiliation, unhappiness, and agony of the two years of her married life, as a result of her husband’s conduct, are of such a nature as to render her further living with her husband insupportable and impossible.”
Defendant answered. He first pleaded a general denial. Further answering, he admitted that he was married to plaintiff on the date set forth in the petition; that the matrimonial domicile has always been in the city of New Orleans; that at the time the petition was filed the sole issue of said marriage was a boy, Francis Presley Raymond (on September 4, 1908, another child, a girl, likewise issue of said marriage, was born); that the allegations of the petition concerning residences on Milan street and 7037 Elm street are substantially correct. Respondent further admits that from the time of its birth until it was surrendered to petitioner after the filing of this suit the child was eared for mainly by respondent’s mother. Respondent denied:
That petitioner was ever deprived of the care and custody of the child; that “her life was made miserable by the cruel and inhuman treatment” of respondent or of members of his family; that “her life was made a *131 torment and a burden by reason of the outrages perpetrated upon ber” ; that petitioner was ever humiliated or taunted or insulted by himself or by. the members of his family, or that physical violence was ever suffered by petitioner on any occasion by respondent or by any member of respondent’s family.
Respondent avers that at all times since his marriage with petitioner he has endeavored to provide her with a home suited to their means and circumstances, and that he has made every effort to live happily with her in accordance with the obligations imposed upon him by the marital contract.
Respondent further avers that any unhappiness or annoyance of petitioner was caused mainly by her own temper and disposition; that petitioner was many times guilty of the use of abusive and violent language toward respondent and the members of respondent’s family; and that in the course of altercations she frequently raised her voice to such a pitch as to attract the attention of neighbors and passers-by, and that on other occasions she gave way to fits of passionate screaming, all without there being any cause therefor, and that this conduct upon the part of petitioner caused remonstrance and rebuke upon the part of respondent and the members of respondent’s family.
Respondent further avers that for a number of months after its birth his child was delicate and required constant care as to its clothing and diet, and that petitioner was either unable or unwilling to do the necessary amount of care, and that for this reason, and for this reason solely, it was cared for by respondent’s mother. Respondent avers that during the greater part of the time that has elapsed since the marriage the members of his wife’s family were made welcome at his home, and were encouraged to visit her, but finally the conduct of some of these relatives became such that they were requested to cease their visits, but that such request Was only made after due and sufficient cause had been given.
Respondent denied that his conduct had ever been such as to render their further living together insupportable and impossible, but averred, on the contrary, that by mutual concessions' broken ties can be reunited, and a happy home maintained.
In view of the premises, respondent prayed that plaintiff’s petition be dismissed, and for such other relief as the court may deem proper in the premises.
The trial resulted in a judgment by the district court ordering, adjudging and decreeing in favor of the plaintiff a separation from bed and board between her and the defendant, her husband, and granting her the permanent care, custody, and control of her two minor children, Francis Presley Raymond, and Celia Delsa Raymond, issue of her marriage with defendant, the latter child having been born since the institution of this suit, and further judgment for all costs.
It further decreed that plaintiff’s rule for alimony be held in abeyance until such time as defendant may be possessed of means to pay the same, with right to plaintiff thereupon to have the same renewed, fixed, and enforced. Judgment read and rendered in open court June 29, 1909.
Defendant has appealed.
Opinion.
Plaintiff and defendant were married in February, 1906. For the first few months of their married life they kept house in a building leased by the husband situated on Milan street. Thereafter, in view of her approaching confinement, her husband took her to the house of his parents, Mr. and Mrs. P. L„ Raymond, No. 7037 Elm street, at which place she gave birth to a son. Plaintiff with her baby and husband remained with the' latter’s parents for a year or more. During *133 this period disagreements between the spouses arose from the complaint of the wife that her mother-in-law had taken from her the care and control of her baby to a degree which she claimed was unwarranted, and which was intolerable to her. The differences between the husband and wife became such as to threaten a separation, and each employed attorneys to represent them. A conference between these attorneys took place, at which it was agreed that the plaintiff and her husband should take a trip to Ocean Springs, leaving the baby with his grandmother, that on their return to New Orleans they should again keep house, and that the child should be placed in the care and charge of its mother. On their return to New Orleans, the husband again leased a house on Milan street, and he and his wife resumed their housekeeping, but the child was not placed under the control of its mother, 'but continued with its grandmother as before. This condition of things existed for three or four months, at the end of which time her husband took her again to the house of his parents, where she remained only a single night, and went the next morning to her own mother’s house, where she stayed for about a month. Through the exertions of the same attorneys who had acted on behalf of the two spouses before, the couple resumed their relations again on Milan street. But, though the child was taken to the Milan street residence, he was taken there by the husband’s mother and her daughter for the purpose it was stated of enabling the mother to learn how to prepare the child’s food and how to care for it. They were (it was said) to remain there only temporarily for that purpose. A short time thereafter the husband informed his wife that he had made up his mind to return and live with his parents, and that she and the child were to accompany him there. This the wife refused to do. On February 17, 1908, about 8 o’clock in the morning, a carriage drove up to the door of young Mrs. Raymond’s residence, and her husband informed her that he was about to leave the house and return to his parents’ home with the child, and called upon his wife to go with them. This she again declined to do, whereupon he took the child in his arms and started to the carriage, followed by his mother and sister. 1-Iis wife ran quickly to the rear of and around the house, and reached the front gate ahead of them, and threw herself against it to bar their way out, seizing her husband and trying to take the child from him, and screaming at the same time. She was unable to do so, and he entered the carriage with the elder Mrs. Raymond and her daughter, and drove away leaving her behind.
The present suit for separation followed.
At the time judgment was rendered the trial judge was confronted with a condition which would carry with it as a result (if judgment was rendered refusing the relief plaintiff prayed for) the wife’s being forced either to leave the matrimonial domicile as. then established and follow her husband and her child to his parents’ house under circumstances which were by her considered to be intolerable and insupportable, or she would be forced to remain apart from her husband and child, and surrender the latter permanently to her husband’s parents.
Facing the fact of this alternative, the trial district judge reached the conclusion that the husband was not justified in breaking up the home which he had established for himself and his wife and their child, and forcing her, in. order not to be separated from it, to consent to live at his parents’ home under conditions which were to her unbearable.
We agree with the trial judge that the situation was such as to legally entitle the wife to a judicial separation from her husband.
*135 Defendant in his answer denied that his conduct had ever been such as to render his wife and himself living together insupportable and impossible. He avers that, on the contrary, by mutual concession broken ties can be reunited, and a happy home maintained.
. There is no declaration by the defendant of any promise or intention to make any change in the situation of which the wife complains. The judgment in this case is not final. The door is yet left open as respondent asserts for the resumption of marital relations between the parties and opportunity afforded to secure a happy home.
We are of the opinion that the judgment appealed from is correct, and it is hereby affirmed.