LAND, J.
The plaintiff instituted suit on October 28, 1920, to obtain a decree of separation from her husband upon the sole ground, of abandonment without lawful cause. The order of the court, made the day after the filing of the petition, authorized the plaintiff to prosecute the suit, ordered reiterated summons to issue to the defendant, according to law, summoning him to return to the matrimonial domicile, 515 Short street, -city of New Orleans, and fixing said place as the matrimonial domicile during the pendency of these proceedings.
On November 11, 1920, defendant filed his answer to plaintiff’s demand. He averred that he has not deserted the plaintiff, but that he had always been ready and willing to live with her and to fulfill all of his marital obligations. Respondent alleges that he was obliged to leave the matrimonial domicile at 515 Short street, where he formerly lived with his wife, that he was renting an apartment in said house from the father of his wife, and that his wife suddenly decided that she did not want to live with him, and stated that she no longer eared for him, and. that, on account of the sympathy of the father with the position of the daughter, respondent moved his said domicile from 515 Short street, the home of the wife of defendant, to 1217 Eourth street, and that respondent has written his wife inviting her to come and live with him at his new domicile, and offering to fulfill all of his marital obligations. Respondent prays that his answer be deemed good and sufficient, and that plaintiff’s claim be denied, and that her suit be dismissed at her cost.
The reiterated summons were served on defendant. Judgment was rendered against him commanding him to return to the matrimonial domicile, and reiterated notices of this judgment were served upon him. On October 28, 1921, the ease came on for trial, and on December 14, 1921, judgment of separation in favor of plaintiff was read and signed in open court.
[1] There has been considerable contention in this case over the fixing by the lower court of the last place of residence of the husband and wife as the matrimonial domicile during the pendency of these proceedings and the assignment by the court of such domicile as the place of residence of the wife pendente lite. . It is argued by counsel for defendant that, as the wife is bound to live with the husband and to follow him where-ever he chooses to reside, this order of the court was illegal, as the husband left the matrimonial domicile at 515 Short street and had established a new residence at 1217 Eourth street in the city of New Orleans. C. C. art. 120.
This is the general rule, as asserted by defendant’s counsel; yet, where the wife has instituted suit against the husband and is seeking in the courts to obtain a decree of separation from him on the ground of abandonment, the law makes an exception to this general rule, and clothes the trial judge with authority to select the house where the wife shall reside during the pendency of the suit.
Article 147 of the Oivil Code, providing that the judge shall appoint a house in which the wife must reside, where she sues for a separation, if she has left or declared her intention of leaving the dwelling of her husband, cannot be construed as depriving the court of the authority to make such selection, in the event the husband abandons the matrimonial domicile, as the Oivil Code also provides that, if the wife has not a sufficient-income for maintenance during the suit for separation,' the judge must allow her a sum-for her support, proportioned to the means-of her husband; and, as the husband cannot be compelled to pay this allowance, unless the wife proves that she has constantly resided in the house appointed by the judge, *1043 it follows that it is the duty of the trial judge to select and assign a place of resi-. dence to the wife, even when she has not left the common dwelling, but is abandoned by her husband, in order to protect her legal rights to claim alimony from the husband pendente lite. C. C. arts. 147, 148.
This court has held that, where a wife sued for a separation, and the court assigned her a separate domicile, and the defendant husband reconvened with a demand for a separation from bed and board on the ground of abandonment, and obtained an order of court that the wife be summoned to return to the matrimonial domicile, the refusal of the wife to obey the summons was justified by the order assigning her another and different domicile pending the suit for separation. Jolly v. Weber, 36 La. Ann. 676; Ashton v. Grucker, 48 La. Ann. 1201, 20 South. 738. Rohr v. Stechman, 119 La. 159, 43 South. 991.
[2] The decision in the Jolly v. Weber Case is based upon articles 144 and 147 of the Civil Code of this state. Article 144 declares that—
“The absence of the husband or wife, which has had a lawful cause, although it shall appear that the absentee has not been heard of, cannot authorize a demand of separation, except so far as is provided in the title: Of Absentees.”
Article 147 makes it the duty of the judge to assign to the wife a house, “wherein she shall be obliged to dwell until the determination of the suit,” and provides that—
“The wife shall be subject to prove her said residence as often as she may be required to do so, and, in case she fails so to do, every proceeding on the separation shall be suspended.”
It therefore appears from the provisions of these articles and from the decisions above cited that the assignment by the judge of a place of residence to the wife, during the pendency of the suit for separation, is a lawful cause for her not to follow the husband to a new domicile established by him, and that she is not guilty of abandonment be-cause she fails or refuses so to do.
Ordinarily it is the duty of the wife to live with the husband and to follow him wherever • he chooses to reside. C. C. art. 120.
While the husband has the exclusive right to select the matrimonial domicile, and the refusal of the wife, without lawful cause, to follow him to his new abode will be construed as an abandonment within the mean- ' ing of the law, and will justify his demand for a judgment ordering her to comply with his request, yet the exception to this rule takes place when the court has assigned to the wife pendente lite a domicile in which she must reside during the pendency of her suit for separation or divorce. Gahn v. Darby, 36 La. Ann. 70; Neal v. Her Husband, 1 La. Ann. 315; Birmingham v. O’Neil, 116 La. 1085, 41 South. 323; Chretien v. Husband, 5 Mart. (N. S.) 61.
[3, 4] The house assigned by the judge to the wife in this case is the last matrimonial domicile where the husband and wife lived together prior to the institution of this suit. It is admitted to be such in the answer of the defendant filed in this case. It is necessarily, therefore, the matrimonial domicile to which the husband must be cited to return, under the provisions of article 145 of the Civil Code. The order of the court declaring it to be the matrimonial dqmicile during the pendency of this suit was wholly unnecessary and obviously unimportant, as it had already acquired the fixed legal status of being the matrimonial 'domicile of the parties to this suit by the husband and wife living there together before this action was brought by the wife.
If the husband can abandon the wife and establish a new matrimonial domicile during the pendency of a suit against him, how can he be compelled to return to the last matrimonial domicile? It is evident that he could not be, and the order of the court summoning *1045 him to return would be a vain and nugatory proceeding. It would be equally so to order the husband to return to the new matrimonial domicile, for he would be there already.
• It is equally patent that the court would be powerless, under such circumstances, to order the wife suing for a separation to return to the husband’s new matrimonial domicile, especially in the absence of a reeonventional demand for separation, as in the present case. . The very purpose of the law in requiring the husband or wife to return to the matrimonial domicile is to afford them an opportunity to become reconciled and reunited. Ample delays and reiterated summonses and notices have been provided by law to effectuate this object. Under the theory of counsel for defendant, the husband could evade, by establishing a new domicile after the institution of a suit against him, not only the plain purpose of the law, but he could successfully block the suit against him, and defeat the action of the wife at his own pleasure.
It would be clearly contrary to public policy to allow the husband to establish a different domicile after the institution of a suit against him for separation or divorce. If he should be permitted to do so, and the wife can, be compelled to return to that domicile at his beck or nod, because it may be her duty ordinarily, to live with her husband and to follow him wherever he may choose to reside, then the husband, let him be never so guilty of any or all of the legal causes for separation or divorce, can defeat the suit of the wife, however well founded, merely by establishing a new matrimonial domicile and inviting her to return to .it. If she returned, then he could plead reconciliation and end the suit. If she did not return, then he could demand a separation on the ground that his wife had abandoned him without lawful cause, and, upon the trial of the case, both parties being at fault, the court would say that neither was entitled to relief. This contention of able counsel for defendant is not sound in principle, and is destructive both of the legal rights of the wife and of the salutary purposes and processes of the law, and cannot be accepted by this court as a correct interpretation of the law on the subject.
[5] The sole ground for the suit for separation in this case is that the defendant husband abandoned his wife without any lawful cause and refused to return to the matrimonial domicile. The wife has not testified in this case. The uncontradicted testimony of the defendant shows that his wife and himself occupied an apartment in the house of the wife’s father at 515 Short street in the city of New Orleans; that there had never been any trouble between them until the night defendant left the common dwelling; that on the return of his wife from Colorado, where she had gone for her health, defendant noticed that her feeling towards him had changed. Defendant testified:
“On Saturday night we went upstairs. She told me that she did not want to live with me any more; that she had changed her mind and did not love me any more, and wanted her freedom. Q. What did you do then? A. I could not do anything else; I had to leave. I was renting an apartment from her father in his residence. Although it was my apartment, we had a common entrance to the apartment of her father. I did not want to leave her, but had to. Q. Did you want her to divorce you at that time? A. No, sir. Q. What did you do next? A. I went to my present residence, and from there I wrote her a letter telling her that I had changed my domicile and I wanted her to come live with me and make our marriage a success. Q. I show you a letter dated October 29, 1920 — a carbon copy of it.' Did you write that letter and to whom? A. Yes; I wrote that letter to my wife. This is a copy. Q. Did you know whether she received it? A. I asked for a registered return receipt, and I have it bere. It is signed in her own handwriting. Q. What date was it mailed? A. October 29th; signed by her on the 30th.”
The letter reads:
“Mrs. Jose A. Carter, 515 Short Street, New Orleans, La. — My Dear Alice: My reasons for writing you is in order that there might pos *1047 sibly be some misunderstanding in regard to my position. It has never been my intention to leave you, and I am only absenting myself from our apartment because of the fact it was evident to me it was not agreeable to you for me to remain there, and yesterday what clothes I possess were sent down to my house. Accordingly I have established a new residence and will be very glad for you to come to me there, as I have no desire to do anything but mate our marriage a success. As ever, De Trava.”
The defendant’s wife made no reply to this letter.
Mr. Spansenberg, father of plaintiff, testified as follows:
“Q. Will you state the general nature of the conversation you had with Mr. Carter as to whether he was willing to return or not, and .why he did not return? A. My conversation after he left the house was only of a friendly nature, and he had no feeling against me, other than to return. Q. Did he indicate a willingness to still live with his wife? A. He said he had hopes of a reconciliation. Q. Did Mr. Carter make any efforts to bring about a reconciliation between himself and his wife? A. Not on my part. Q. He did not say he hoped it could be arranged? A. Yes, sir. Q. You testified he could always return to the matrimonial domicile. How did you know his wife was willing that he should return? A. I don’t know. I know he had the key and his apartment was kept intact for a number of months. Q. You cannot say his wife was willing to receive him? A. I could not say she was or was not. Q. Mr. Spansenberg, Mr. Carter did not return to that domicile? A. He did not to my knowledge.”
The father of plaintiff and the defendant are the only witnesses who testified on the trial of this case. The defendant does not state in his testimony that he had ever had any misunderstanding of any kind with plaintiff’s father, who declares that the relations between his son-in-law and himself remained pleasant, after defendant left the common dwelling. There is not a single word in the' evidence in this case to show that defendant was ever guilty at any time of any misconduct towards his wife. His uncontradicted .testimony is that no cross .words were ever uttered or trouble of any kind had ever taken place between himself and his wife prior to his leaving the matrimonial domicile. Without any apparent reason, his wife, on returning from a summer vacation, stated to defendant that she had ceased to love him and wanted her freedom. Defendant left the common dwelling. The day after this suit was filed against him he wrote a letter to his wife asking her to return to him at his new domicile, declaring that he desired to make their marriage a success. In conversations with his wife’s father he expressed to him hopes of a reconciliation with her.
The conduct of the wife in this case has been the sole cause of the separation. She has made no effort to explain this conduct to her husband, and has disdained his attempts at reconciliation. If her statement was made in a mere fit of temper, ample time has passed since then for her to correct such statement, and she would have done so,' if she had any real affection for her husband. It was not necessary for her to go to the new domicile of the husband in order to inform him that what she said was in anger, and that she' felt sorry for the act. The husband’s letter to her gave her every opportunity to heal the situation and to bring about a reconciliation. This she has continuously refused to do.
The husband and wife owe to each other mutually fidelity, support, and assistance. C. C. art. 119.
The measure of. the performance of such duties by the wife necessarily depends upon the degree of her affection for her husband. When the love of the wife for her husband ceases, there is an end, in fact, if not in law, to the conjugal relations, an inevitable failure upon her part to perform the reciprocal duties arising from the contract of marriage, and an end to the happiness of the home itself.
[6] Marriage is a civil contract in which mutual obligations are assumed by the contracting parties. The spouse who willfully *1049 violates this contract can have no standing in court to demand its rescission.
[7] It follows, therefore, that when a permanent change in the wife’s affections has taken place, without any fault or misconduct on the part of the husband, he has a lawful cause for leaving the matrimonial domicile, and his doing so cannot be construed as a technical abandonment of his wife. C. C. art. 143.
[8] For a wife to state to a husband that she has ceased to love him and that she demands her freedom, when said, not in a fit of temper, but as a fixed and deliberate conclusion, necessarily constitutes cruel treatment. Such statement to a husband who is devoted to his wife is in itself the very refinement of cruelty. It is the end to connubial felicity, to the marriage relation, and to the home itself. Neither law, justice, reason, nor considerations of public policy demand that the husband and wife, under such circumstances, shall be condemned to a condition of penal servitude or to a state of continuous strife and discord.
While it is the fixed policy of this state, and wisely so, to discourage divorce, and to effect, if humanly possible, a reconciliation between the separated husband and wife, yet we view as a vain and futile effort any attempt upon the part of this court to compel a husband and a wife to dwell together beneath the same roof after the affection of either spouse for the other has permanently ended, for under such discordant and unnatural conditions their dwelling together must necessarily become insupportable.
As the plaintiff in this case is at fault, and as the defendant had legal cause for leaving the matrimonial domicile, the judgment of the lower court in favor of plaintiff is, in our opinion, erroneous.
[9] Since the appeal has been lodged in this court, the appellee has filed here a plea of res judicata as against any issue of a “lawful cause” in the defendant leaving the matrimonial domicile.
Said plea is based upon the judgment rendered bj’ the civil district court of the parish of Orleans on March 21, 1921, commanding defendant to return to the matrimonial domicile, and from which defendant prosecuted no appeal.
Article 145 of the Civil Code provides that:
“The abandonment with which the husband or wife is charged must be made to appear by the three reiterated summonses made to him or her from month to month, directing him or her to return to the * * * matrimonial domicile, and followed by a judgment which has sentenced him or her to comply with such request, together'with a notification of the said judgment, given to him or her from month to month for three times successively.”
The judgment which condemns a defendant to return to the matrimonial domicile is not a final judgment. It is a mere interlocutory decree, rendered incidentally and during the regular course of the proceedings in a suit for separation, preliminary to the trial on the merits, and is a part of the evidence required by law to establish proof of abandonment. Such judgment is not rendered upon the merits of the case, but is based upon the three reiterated summonses which must precede the rendition of such judgment, and upon the failure of defendant to comply with the command contained in the summons to return to the common dwelling.
Such judgment in itself is not even proof of abandonment, but, in order to complete such proof, the notification of such judgment, after its rendition, must be given to the defendant from month to month for three times successively. Such judgment is not a final judgment rendered in another suit, but it is a part of the preliminary proceedings of one and- the same suit. Such judgment does not pretend to adjudge the issue as to whether the' abandonment by the defendant was for a “lawful cause.” It merely sentences the defendant to return to the common dwelling *1051 and. leaves the question of “lawful cause” vel non to be determined contradictorily with the defendant upon the trial of the merits of the case.
The authority of the thing adjudged tabes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality. C. C. art. 2286.
There is but one demand in this case, and that is for judgment of separation based upon abandonment without “lawful cause.” The judgment pleaded as res judicata as to the issue of “lawful cause” is merely a preliminary decree condemning defendant to return to the matrimonial domicile. Its object is entirely different from the object of the final judgment herein rendered and decreeing a separation mensa et thoro.
[10] This suit was filed October 28, 1920. Defendant filed his answer November 11, 1920. At that date only one reiterated summons had been served upon him. His answer put at issue the question of abandonment for “lawful cause.” He denied the desertion, and set up in his defense a state of facts which he contends justified him in leaving the common dwelling. This issue could not, therefore, be tried and disposed of by a preliminary decree in advance of the final trial on the merits.
The plea of res judicata is not well founded and is overruled.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, that plaintiff’s demand be rejected, and that this suit be dismissed at plaintiff’s costs.
O’NIELL, J., concurs in the result.
Rehearing refused by Division O, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.