(101 South. 407)

No. 26558.

## DUCROS v. DUCROS.

(June 27, 1924. Rehearing Denied by the Whole Court Sept. 25, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Divorce** ☞27(18)—Husband's failure to give wife more of his society held not cruelty entitling wife to separation from bed and board.

Husband's neglect of wife and failure to give her more of his society, where due to attention he was required to give his business, *held* not cruelty entitling wife to separation from bed and board, under Civ. Code, art. 138.

2. **Divorce** ☞27(10)—Failure to support wife not per se, but may be cruelty entitling to separation from bed and board.

Failure to support wife *held* not per se ground for separation from bed and board, not being enumerated as such in Civ. Code art. 138, but may, in connection with other facts, constitute such cruelty.

3. **Divorce** ☞130—Evidence held insufficient to prove husband's failure to support wife.

Where wife claimed that husband's failure to support her constituted cruelty entitling her to separation, evidence *held* insufficient to prove such failure to support.

4. **Divorce** ☞27(10) — Refusal to give wife monthly allowance, and insistence that she state purpose of expenditures, held not cruelty.

Where husband made ample provision for wife, his refusal to give her monthly allowance, and his insistence that she state purpose of expenditures and render him statements thereof, *held* not cruelty entitling her to separation from bed and board, under Civ. Code, art. 138.

5. **Divorce** ☞27(18)—Husband's treatment of wife during quarrel held not cruelty.

Husband's treatment of wife during quarrel in his office, to which she had come after he had told her to go home because of the work

he was required to do, *held* not to constitute cruelty entitling her to separation from bed and board.

6. **Divorce** ☞27(7) — Husband's statement that he no longer loved wife held not cruelty.

Husband's statement to wife that he no longer loved her *held* not cruelty entitling wife to separation from bed and board, under Civ. Code, art. 138.

7. **Divorce** ☞27(18)—Husband's use of wife's funds without her consent held not outrage entitling her to separation from bed and board.

Husband's use, without wife's consent, of money she had earned prior to marriage as first payment on their home, *held* not an outrage entitling to separation from bed and board, under Civ. Code, art. 138.

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Suit by Ruth Seawell Ducros against Robert Ducros. Judgment for plaintiff, and defendant appeals. Judgment annulled and rendered.

Sanders, Baldwin, Viosca & Haspel, of New Orleans, for appellant.

Woodville & Woodville, of New Orleans, for appellee.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

OVERTON, J. Plaintiff alleges that her husband, the defendant herein, treats her with such cruelty and that his conduct towards her is so outrageous as to render their living together insupportable; and hence she sues him for a separation from bed and board, and for the care and custody of their only child, a daughter, who at the time of the institution of this suit was about two and a half years of age.

Plaintiff alleges with particularity the various acts of her husband which she contends constitute the cruel and the outrageous conduct alleged by her. These grounds are: That plaintiff shamefully neglects her; that he goes out every night without letting her know where he is; that he goes sometimes

for three months without taking any of his meals at home; that he has cursed and abused her most shamefully without cause or reason; that he has time and again told her that he does not love her, and has told her and her aunt that he is living with her only because of their child; that he sometimes permits months to pass without speaking to her or bidding her good morning; that although he is in the enjoyment of a lucrative business he has not for years given her any money at all, forcing her to teach school to secure money for her personal want, and has provided her only with shelter, food, and clothing; that he has forced her to give him a detailed statement of every penny spent by her, for the purpose of humiliating her; that he has never taken her out to places of entertainment although he knew that she was anxious to go to them; that prior to her marriage she saved $1,000 out of her earnings as a school-teacher; that he used this money without her consent to make the first payment on their home, according to his statement to her; that about two weeks before the institution of this suit, on returning home at about 2:30 in the morning, as was his custom, and on finding the door locked he kicked out a pane of glass, broke the door open, thereby arousing the neighbors, to her great pain and humiliation; and that his cruelties and outrages toward her finally culminated on Sunday, September 23, 1923, in his cursing and abusing her in his office, at about 10 p. m., threatening to strike her, throwing her against his desk, refusing to take her home, and forcing her to call a taxicab, all for no reason whatever.

Separation from bed and board may be claimed by either spouse for cruel treatment or outrages of one of the spouses towards the other, if such ill treatment is of such a nature as to render their living together insupportable. Civil Code, art. 138. If

plaintiff has proven all of the outrages and various acts of cruelty, of which she alleges that her husband has been guilty in his conduct towards her, then, unquestionably, she has established a case entitling her to the relief for which she prays; but in our view the petition overstates the case against defendant, and when his version of it is taken into account, although it still appears that the conditions under which plaintiff lives are not ideal, yet it also appears that she is not entitled to the relief for which she prays.

In order to fully understand and appreciate the case, it is necessary to take into consideration the exacting conditions of defendant's business. It is due to those conditions, we think, that the trouble between plaintiff and defendant has arisen, and to the fact that plaintiff has failed to appreciate them, and instead has constantly taken a position which, had defendant acceded to, would have resulted in his seriously neglecting his business.

Defendant and two of his brothers organized the Southern Tile Company, or at least were the stockholders and officers of that company. The business at first lost money, or was losing it, when the three brothers assumed charge of it, but between June, 1920, when plaintiff and defendant were married, and January, 1923, the time of the trial of this suit, the business increased 100 per cent., and was earning for the three brothers sufficient to afford them a good living, and to enable the corporation to put aside something as surplus, but in order to put the business on a paying basis, and to enable the brothers to live out of the earnings of it, it was necessary for the business to be operated with the same force, or virtually the same, as that with which it was operated in the beginning. This placed considerable work on the three brothers.

Defendant's duties in connection with the

business as appears from an answer to a question propounded to him during the trial, were as follows:

"I take care of installations, and every once in a while I take care of some estimating, and a good portion of our work is preparatory work for installations, routing of men, listing material, and loading the trucks, so the men will not lose time waiting for material on the jobs."

During the daytime, it appears that defendant's duties took him from one job to another, and that he had possibly from a dozen to as high as twenty-seven places to visit daily, in different parts of the city, and that he endeavored to return to his office between 4 and 5 o'clock in the afternoon, though he did not always succeed in returning that early. After reaching the office he had to route the men and list the material for the next day, for, unless he did so, the result would have been the stopping of the work. As a result of the nature of defendant's work, he was forced to perform a part of it at night, and often he was kept at work until 9 or 10 o'clock, and sometimes later. Moreover frequently he was unable to go home for dinner, for, as he explains, to have done so would have required about two hours, and this would have meant that he would have had to remain in his office two hours later at night. The record leaves no doubt that defendant was at work in his office at nights, and that the nature of his work was such as to have kept him there frequently until a comparatively late hour. The record also establishes, we think, that upon the completion of his work defendant returned to his home each night. While he was kept at his office generally until rather late at night on weekdays, yet he made it a rule to leave it on Sunday afternoons between 1 and 2 o'clock, and upon those afternoons, when the weather permitted, he usually took his wife and child automobiling. The only exception to this rule was during the last two or three months, prior to the institution of this suit, when it appears that his work was such for the time being as to require him to devote nearly all of his Sunday afternoons and evenings to it, which precluded him from going out with his wife and child on these afternoons, and from being with them on those evenings.

This condition of affairs dissatisfied plaintiff from an early period of her married life. She constantly assumed a position that was antagonistic to her husband's business interests. She insisted upon his taking her out, and upon his devoting his evenings to her, when it was impossible for him to do so, without seriously neglecting and endangering his business, upon which both she and he depended for a livelihood. And she still complains, as we have observed, of his failure in these respects, which she apparently attributes to deliberate and cruel neglect upon his part.

[1] True, plaintiff would have been entitled to more of the society of her husband than she actually received, had it been reasonably possible for him to have given her more of it, but, under conditions as they existed during the period complained of, we think that it appears that it was not reasonably possible for defendant to have given her more of it; and we therefore conclude that his not having done so cannot be attributed to deliberate neglect upon his part, amounting to cruelty. The record satisfies us that plaintiff knew of the conditions under which her husband was laboring, but failed or refused to recognize them; and that she knew that his duties required him to remain at his office of nights.

Plaintiff also complains, as we have seen, that defendant sometimes permitted three months to pass without taking any of his meals at home, and that he also permitted months to pass without speaking to her or without even bidding her good morning. We may say, however, that the evidence fails to

establish these allegations, with the exception that it does show, as we have observed, that, due to the nature of his business, defendant frequently found it impossible, or utterly impracticable, to return home to dinner, or at least at the regular dinner hour, but this has been explained above.

Plaintiff also complains, as we have seen, that although defendant is in the enjoyment of a lucrative business he has not given her any money, but has provided her only with food, shelter, and clothing, thus forcing her to teach school to obtain money for her personal wants; and, moreover, that he required her to give a detailed statement of every penny spent by her, this for the purpose of humiliating her.

The evidence discloses that in the commencement of their married life, defendant allowed plaintiff a certain amount each month for household expenses, but that, in the course of time, defendant grew dissatisfied with the manner in which she handled the allowance, and thereafter discontinued it, but allowed her to purchase groceries, clothing, and the necessities of life on credit, he paying the bills himself by check. The evidence also discloses that, after defendant had discontinued the allowance, he gave his wife from time to time, upon her request, small amounts in cash, though always required her to state the purpose for which the money was desired. The evidence also shows that plaintiff informed her husband of her intention to teach school; that he made no reply; and that she taught for one term.

[2-4] Failure of the husband to support the wife is not enumerated in this state as one of the grounds for separation from bed and board, and therefore cannot be regarded as one per se. Van Horn v. Arantes, 116 La. 130, 40 South. 592. It is possible, though, that failure to support may amount, in connection with other facts, to such cruelty as to entitle the wife to a separation from bed and board. However, the evidence in this case does not establish a failure to support. To the contrary we think that the evidence shows that defendant did support his wife. It does not even show that he failed to support her in a manner proportionate to his means. True, the wife taught school for one term. While this provided her with money, which, in so far as we are able to determine from the record, remained under her control, and which she was permitted to spend as she saw proper, and therefore placed her in a more independent position in so far as finances were concerned, still we are not of the opinion that the evidence justifies the conclusion that her teaching was made necessary by a failure upon the part of her husband, either wholly or partially, to support her, but rather to a desire upon her part to be freed of the necessity of calling upon him for money as she needed it, to have more money than she could expect otherwise, and in part to resent the refusal of her husband to provide her with a monthly allowance. The fact that defendant provided no monthly allowance for his wife could not possibly amount to cruelty or to outrageous conduct, either alone or in connection with the remaining facts of the case, and especially is this so, in view of the fact that he provided for her otherwise. In so far as relates to his requiring her to state the purpose for which she wanted money, or to render to him statements of purchases made, these were matters within his discretion. We are not of the opinion that the evidence justifies the conclusion that he did so for the purpose of humiliating her, but because he was not satisfied with some of her expenditures. Likewise, it was within his discretion to pay the servants himself or to permit her to pay them. She has no legal cause to complain, because he paid them instead of permitting her to do so.

Plaintiff also complains, as we have seen, that at a late hour of the night defendant effected an entrance into the home by breaking the glass to the front door, thus alarming the neighbors, and thereby greatly humiliating her. It appears that defendant had experienced some trouble, from time to time, upon returning from his office late at night, in entering his home. He usually had with him a key of his own to the front door. On the night in question he had this key with him, but was unable to use it for the reason that his wife after locking the door that night left her key in the lock, and he was unable to remove it and turn the lock. He rang the bell, but received no response. Finally, he effected an entrance by breaking the glass to the front door. After breaking it he discovered that his wife was standing near the door. Our conclusion is that the incident was one brought about by the wife herself in a persistent effort that was being made by her to force her husband to return home at an earlier hour, when he could not comply with her desire in that respect, without seriously affecting his business, upon which he was dependent.

[5] Plaintiff also complains, as we have seen, that on the night of September 30, 1923, at about 10 p. m., defendant cursed and abused her in his office, refused to take her home, and shoved her against his desk. It appears that during the period in which this incident is alleged to have occurred defendant's company had a large contract that kept him in his office, with one or two exceptions, even on Sunday nights. It also appears that on the night in question plaintiff was visiting a friend, and had taken her child with her. At the close of her visit she telephoned her husband to find out how much longer he would be at his office, and he replied that he would be there about an hour and a half longer, and suggested that she return home on a street car. Instead of so returning she went to his office, taking her child with her. When she reached there defendant was in a good humor. However, during her stay, it appears that she and the child annoyed him in the performance of his work. A quarrel ensued in which, according to plaintiff's evidence, her husband ordered her to return home on a street car, and shoved her against his desk, bruising her arm slightly. It does not appear that defendant cursed plaintiff in the quarrel, though we infer from the evidence that during the course of it he used some harsh expressions. Plaintiff procured a taxicab and returned home.

It cannot be said that defendant was free of fault in the foregoing instance. On the other hand, plaintiff should not have gone to her husband's office under the circumstances. In fact by going there when she was requested not to go, and by annoying him in his work while there, it may be said that she provoked the quarrel that ensued. The shove he gave her in the quarrel must have been only a slight one. In view of that fact, and in view of the further fact that plaintiff provoked the quarrel, we are not of the opinion that the incident warrants, either alone or in connection with the remaining facts in the case, a decree of separation from bed and board.

Plaintiff also complains, as we have heretofore stated, that defendant informed her that he did not love her, and lived with her only on account of their child, and that he made a similar statement to her aunt. The evidence shows that after their troubles commenced, defendant made such a statement to plaintiff; and that, when plaintiff's aunt inquired into the relations existing between the couple, defendant in the course of the conversation made the same statement to her.

[6] The fact that one of the spouses has ceased to love the other, or has so stated to the other, is not named as one of the grounds

for separation from bed and board in this state. Plaintiff however contends that the statements made amount to cruel treatment, and that, as cruel treatment is one of the grounds for separation from bed and board, she is entitled to a separation, because of those statements. In support of her position that the statements amount to cruel treatment, she cites the case of Spanseberg v. Carter, 151 La. 1038, 92 South. 673. In that case it appears that the wife deliberately, upon her return from a trip, informed her husband that she did not love him, and did not care to live with him any longer. After having been so informed, and not knowing what else to do, the husband left the matrimonial domicile, and the wife then sued him for a separation from bed and board, on the ground of abandonment. The issue was whether the husband had lawful cause to leave the matrimonial domicile, and the court very properly held that the statement made by the wife to the husband gave him such a cause and rejected the wife's demand. The decision is authority on that point, but not on the point or to the extent for which plaintiff in this case cites it. True, there are expressions in the opinion to the effect that for a wife to inform her husband deliberately that she no longer loves him constitutes cruel treatment on her part, and upon these expressions plaintiff herein relies. However, it is clear that those expressions are not only obiter dicta, but in the case at bar the husband's statement did not go so far as the statement made by the wife in the case cited, and were made under different circumstances. In our view the statements made by the husband in this case do not constitute cruel treatment.

[7], Plaintiff also alleges, as we have seen, that defendant without her consent used $1,000 that she had earned prior to her marriage to make the first payment on their home, and also that on various occasions he cursed and abused her. In so far as relates to the first allegation mentioned, it may be said that the use by the husband of the wife's paraphernal funds, without her consent, does not constitute an outrage, entitling the wife to a separation from bed and board, whether considered alone or in connection with the remaining facts of the case. In so far as relates to the second allegation mentioned, we do not find that it has been established.

For the foregoing reasons we are not of the opinion that the evidence adduced makes out a case against defendant.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled and set aside, and that plaintiff's demand be rejected with costs.

Rehearing refused by the WHOLE COURT.