McCALEB, Justice.
This is a suit for a separation from bed and board founded on cruelty. It is alleged by plaintiff that she married defendant on July 3, 1947; that a matrimonial domicile was established at 1940 Burgundy Street in the city of New Orleans; that *206 the defendant has subjected her to cruel treatment and outrages in that his daughter and son-in-law, who also reside at the matrimonial domicile, have on numerous occasions cursed, abused and treated her in such a manner as to make her life unpleasant, unbearable and miserable; that defendant is aware of their conduct toward her and has done nothing in regard thereto and that, despite many requests, he has steadfastly refused to send them from the matrimonial domicile or, in lieu thereof, establish a domicile separate and apart from his relatives notwithstanding that he is possessed of sufficient means to do so. It is further averred that, as a result of the conditions obtaining at the home, plaintiff’s health has been seriously impaired; that further living together is intolerable and that, accordingly, she is entitled to a separation from bed and board.
For answer, defendant generally denied the allegations of the petition and affirmatively set forth that his daughter and her husband have treated plaintiff with courtesy and respect and that all difficulties existing between plaintiff and himself result from plaintiff’s deliberate desertion of him on three separate occasions. He further pleads in reconvention for a separation from bed and board, charging plaintiff, in prolix .recitals, with extravagance, lack of affection and attention, desertions, violence of temper and mistreatment of his daughter as the basis of his demand.
After a hearing below, there was judgement in favor of defendant granting him * separation on his plea in reconventioil and plaintiff’s demand was rejected. She has appealed.
. Plaintiff was a settled widow, 60 years of age, at the time she married defendant, a widower about 75 years of age. The . matrimonial domicile was established at defendant’s residence which is located in the upstairs portion of his place of business on Burgundy Street. Prior to the marriage, defendant had lived on the premises for a number of years with his daughter, Antoinette, who helped him in the conduct of his shoe business and also kept house for him. Upon defendant’s marriage to plaintiff, the latter assumed the household duties. She testifies that defendant’s daughter resented the marriage and made her feel that she was not welcome; that the daughter’s attitude made things unpleasant and. that, generally, she found it difficult to live in the hostile atmosphere.
On 'September 5, 1947, plaintiff left the residence and returned on September 11th. Again, on October 8th, she left and returned on October 15th and thereafter left on October 28th and returned on December 24th. She explains that the first and second temporary departures were for the purpose of disposing of certain furniture located in the house at which she had been living before th.e marriage; that defendant knew all about it and had given his permission for her to att.end to this business. *208 Defendant, of course, denies this. The subsequent desertion plaintiff ascribes to the unhappy conditions existing at the matrimonial domicile, flowing from the animosity of defendant’s daughter.
From the time plaintiff returned to defendant on December 24, 1947 until May 19, 1948, the final separation, plaintiff describes conditions at the matrimonial domicile as almost intolerable. During her temporary absence (October 8 to December 24, 1947), defendant’s daughter married a Mr. Monteverde, who immediately moved into the Burgundy Street residence and has lived there ever since. Plaintiff declares that the unsuitable conditions -became increasingly worse after this, despite the fact that defendant attempted to arrange so-called separate quarters in the residence for the young married couple. These quarters consisted merely of a separate bedroom and, later, a separate kitchen and the two families were compelled to share the same bathroom and parlor. Plaintiff asserts that she was constantly mistreated by defendant’s daughter and son-in-law, so much so that she became ill; that, prior to May 1948, she consulted a physician and was placed in a hospital, on May 19, 1948, under his care; that she was discharged from the hospital some two weeks later but that she was required to go to the country for convalescence. She further states that she notified her husband that she would return from the country on June 15, 1948; that he met her at the bus station; that she offered to return to the matrimonial domicile, if he would require his daughter and son-in-law to vacate the premises, or that she would gladly live with him, if he would establish a separate matrimonial domicile but that defendant refused to do this and left her at the bus station.
The facts respecting plaintiff’s illness, her stay at the hospital, and her offer to return to the matrimonial domicile under the conditions above stated are not seriously controverted by defendant. Indeed, his testimony is, for the most part, devoted to complaints respecting plaintiff’s extravagance (he gave her a little over $200 during the entire time of their marriage), her desertions of him and that she went out at night without his permission. On cross examination, he says in one part of his testimony that he does not know of any trouble between his wife and his daughter. However, shortly afterwards, he flatly contradicts this statement for he says “ * * if you want to know the truth, she wanted trouble all the time, she was the one putting the trouble. She was making trouble in my family”. Defendant’s daughter and son-in-law concede that there was ill feeling in the household but they place the blame on plaintiff’s shoulders.
A careful consideration of all of the testimony convinces us that the matrimonial difficulties of the spouses stemmed, in the main, from defendant’s insistence that plaintiff live with his daughter and son-in-law, when it was perfectly plain that *210 the two women were hostile and could not live peaceably in the same dwelling.[1] Thus, defendant failed in his duty to provide a home separate from that of his own family and his refusal under the particular circumstances of this case' — as the proof clearly shows that he owned three properties and was financially able to provide a separate abode — constituted cruel treatment un7 der the established jurisprudence of this court. Delsa v. Raymond, 126 La. 126, 52 So. 240; Geisinger v. Conners, 130 La. 922, 58 So. 815; Verret v. Koelmel, 162 La. 277, 110 So. 421; Gann v. Pflueger, 194 La. 885, 195 So. 345 and Cormier v. Cormier, 193 La. 158, 190 So. 365 and authorities there cited.
 Our conclusion that the husband was guilty of cruel treatment in requiring his wife to continue to live with his daughter and son-in-law, when they were incompatible, disposes of the entire case inasmuch as the desertions by plaintiff, pleaded in defendant’s reconventional demand, were obviously justified.[2] Further than this, the allegations of the reconventional demand concerning alleged ill treatment by plaintiff of defendant’s daughter and son-in-law form no basis for a charge of cruelty on behalf of defendant. And it is well settled that the several abandonments by plaintiff, upon which defendant strongly relies as constituting cruel treatment, cannot be regarded as such under Article 138 of the Civil Code. See Sampognaro v. Sampognaro, 211 La. 105, 29 So.2d 581, 583.[3]
The judgment appealed from is reversed and it is now ordered that there be judgment in favor of plaintiff, and against defendant, decreeing a separation from bed and board between them and dismissing defendant’s demand in reconvention. Defendant is to pay all costs.

. In Verret v. Koelmel, 162 La. 277, 110 So. 421, the court said: “* * * it is common knowledge to all experienced in such matters that the female members of the husband’s family frequently create, either intentionally or unintentionally an unsettled or disturbed condition of mind in the wife which is destructive of her happiness and comfort.”

. Aside from this, abandonment is not allowable as a ground for a separation when pleaded in a reconventional demand. Bienvenu v. Her Husband, 14 La.Ann. 386; Ashton v. Grucker, 48 La.Ann. 1194, 20 So. 738; Monteleone v. O’Hanlon, 159 La. 796, 106 So. 308; Spiller v. Spiller, 170 La. 813, 129 So. 212; Bullock v. Bullock, 174 La. 839, 141 So. 852 and Williams v. Williams, 212 La. 334, 31 So.2d 818.

.There we said: “Remaining for consideration is plaintiff’s admitted refusal to live with his wife, an act which the latter charges is cruel treatment. Perhaps the refusal constitutes an abandonment of the wife for which she can obtain relief under the provisions of Revised Civil Code Articles 143 and 145; but it is not cruel treatment within the meaning of Revised Civil Code Article 138. Ducros v. Ducros, 156 La. 1033, 101 So. 407; Parrish v. Parrish, 164 La. 62, 113 So. 764.”