REID, Judge.
This is an appeal by Warren Joseph Dou-cet, from a judgment granting his wife, Mrs. Josephine Broggi Doucet, an absolute divorce on grounds of two years separation and awarding her custody of their minor child, Anna Marie Doucet, as well as alimony to maintain herself and the minor. The first suit by Warren Doucet against his wife was brought for a separation from bed and board on the grounds of abandonment. This suit was never tried on the merits and on June 19, 1961 Warren Joseph Doucet filed this suit for divorce, predicated upon the parties living separate and apart for two years without becoming reconciled. Plaintiff alleged his wife abandoned him without just cause or provocation, and as a result she was not entitled to alimony for her support. He asked for visitation rights with his daughter in the Parish of Lafour-che at least one week out of every month until the child reached school age. In this suit defendant filed an answer admitting she and plaintiff had lived separate and apart for more than two years. Taking the position of plaintiff in reconvention, Mrs. Dou-cet contended her abandonment of her husband resulted from cruel and outrageous treatment toward her, rendering their continued living together insupportable. She asked for judgment in her favor and against defendant on the grounds of two years separation, further praying for custody of their child, alimony for the support of the child in the amount of $150.00 a month, additional alimony for herself in the amount of $150.00 per month, together with separation of community property and attorney fees in the amount of $1000.00.
This matter was tried on the merits and with written reasons for judgment the Lower Court granted Mrs. Josephine Brog-gi Doucet an absolute divorce from her husband Warren Joseph Doucet, awarding Mrs. Doucet the permanent care and custody of the minor child, Anna Marie Dou-cet, granting the husband the same visitation rights as had heretofore existed, and awarding alimony of $150.00 for the support of Mrs. Doucet and her child.
From this judgment Warren Joseph Dou-cet, has brought this devolutive appeal.
Appellant contends the Trial Court erred:
“1. In failing to find that no unpleasant, unkind, hostile or smouldering feelings of resentment existed between the mother-in-law and the wife until after the parties were separated, yet in finding and basing a decision upon “Smouldering feelings of resentment” when both parties at all times, treated each other with civility, as the Trial Judge found to ' be a fact.
“2. In finding that the primary reason for the separation of the parties was the establishment of the family home next door to the mother-in-law.
“3. In finding that the mother-in-law exerted influence on the husband or wife which the wife resented and found objectionable in the absence of any facts to that effect prior to separation.
“4. In finding that the husband, during his marriage, remained in his mother’s sphere of influence.
*898 “5. In finding that the husband was able to provide a home elsewhere and under the circumstances had a duty to do so.”
Neither of the parties dispute their continuous separation for a period of time of more than two years. However, appellant contends the separation resulted from his wife’s abandonment without cause; the act of abandonment places her at fault, negating her right to alimony for her own support. Appellee, on the other hand, avers her abandonment of her husband was justified and that she was without fault.
Article 160 of the LSA-Civil Code provides :
“If the wife who has obtained the divorce has not sufficient means for her maintenance, the Court may allow her in its discretion, out of the property and earnings of her husband, alimony which shall not exceed one-third of his income; provided, however, that in cases where, under the laws of this State a divorce is granted solely on the ground that the married persons have been living separate and apart for a certain specified period of time, and the husband has obtained a divorce upon the ground of such living separate and apart, and the wife has not been at fault, then the Court may allow the wife in its discretion, out of the property and earnings of her hushand, alimony which shall not exceed one-third of his income.”
The parties were married to each other in New Orleans on November 25, 1956; lived the first week of their married life with plaintiff’s mother, Mrs. Ludwig Dou-cet; then moved to Galliano, Louisiana to a house belonging to appellant’s brother, E. J. Doucet, where they lived until January, 1959. In January 1959 appellant’s mother moved a house, belonging to the estate of her recently deceased husband, from Galliano to Cut-Off, Louisiana, and placed it on a lot some 50 to 75 feet in back of her own home, where the parties and their daughter lived until their separation on June 18, 1959.
Plaintiff was employed as Captain on a boat owned by himself and his family. He alternately spent 14 days aboard the craft, and 7 days at home with his wife. By mutual agreement, when Mr. Doucet lived on board the boat his wife and daughter visited her parents in New Orleans. On June 18, 1959 Mr. Doucet took a trip on the boat returning on August 1, 1959. During this period Mrs. Doucet remained in New Orleans. Appellant neglected his promise to call his wife when he returned from the trip.
Mrs. Doucet was three months pregnant in June, 1959, at the time she went to New Orleans, but failed to tell her husband because she was not certain of the fact. She suffered a miscarriage during the latter part of July and was very anxious to have her husband visit her and communicate with her. He visited her in the hospital in New Orleans on August 1, 1959 in a drunken condition. He subsequently took her to her parents’ home in New Orleans where it was agreed she would remain until she recuperated. Mrs. Doucet testified her husband at that time promised to provide her a home some distance from his mother’s home, but the promise was never forthcoming. She also testified that on several occasions she agreed to return to her husband in the event he provided her a home a sufficient distance from the unbearable dominating influence of his mother.
In this connection the District Judge found as follows:
“While there is evidence of excesses on the part of the plaintiff and particularly instances of inebriety, we believe they were only minor disturbances in the marital relationship, which were condoned by the continuance of such relationship. We are impressed that the primary reason for the separation of the parties was the establishment of *899 the family home next door to the plaintiff’s mother, whose influence the defendant resented and found objectionable. While the evidence shows that the defendant and her mother-in-law always treated one another with civility and courtesy, it is quite clear that there was smouldering feelings of resentment toward one another.
“This is confirmed by the testimony of Miss Madeleine Doucet, a sister of plaintiff, the substance of which is that Mrs. Ludovic Doucet, the plaintiff’s mother, felt that the defendant ‘was not the proper person suited’ for her son, that the mother-in-law generally disliked the defendant, and ‘didn’t feel that she was good enough’ for her son, and expressed her opinion as to how she thought her grandchild should be raised. The witness described her mother as domineering, which is the apparent reason for leaving her mother’s home and residing with her sister.
“Mrs. Enola Doucet, the wife of Warren Dufrene, another sister of the plaintiff, generally confirms the testimony of the defendant as to the objectionable actions of her mother-in-law. And the unhappy relationship between the mother and daughters is shown by the testimony of Mr. Dufrene, whose children are not permitted to visit his mother-in-law (their grandmother) because of disciplinary problems.
“All of which shows the mother-in-law to be a disturbing influence not only in her own family relationship, but also in the marital relationship between the parties. The foregoing circumstance (in addition to the fact that the husband seldom took the wife any place on his days off from work) clearly demonstrates the reason for the defendant visiting her mother’s home during her husband’s prolonged absences from home. Another incidental circumstance that tends to magnify the wife’s resentment is the fact that her husband has not observed the biblical injunction to forsake all others, but has remained in his mother’s sphere of influence.”
It is not difficult to understand that while the wife and mother-in-law treated each other civilly when they met, the wife did feel resentment toward her mother-in-law for conversing with her son in French in her presence, knowing of her mother’s-in-law feeling for her from information furnished by her two sisters-in-law, Miss Madeleine Doucet and Mrs. Enola Doucet Dufrene.
Appellant contends the fact that a wife lives in close proximity with her mother-in-law, is of itself insufficient evidence of cruel treatment by the husband in the absence of evidence showing hostility or unkind acts by the mother-in-law toward her daughter-in-law. Appellant contends the record is silent as to any overt hostility on the part of his mother. However, in the leading case of Cormier v. Cormier, 193 La. 158, 190 So. 365, it was held, there is a presumption of a hostile atmosphere where the families live proximately and it is the duty of the husband, where possible to provide quarters apart from his mother. In the event the husband does not fulfill this duty his failure is presumed to constitute cruel treatment. The Court held in Cormier v. Cormier, 193 La. 158, 190 So. 365:
“ ‘It is cruel treatment, under the circumstances existing in this case, to refuse to provide a separate home for one’s wife sufficiently remote from his mother’s home. Most of the cases refer to the husband’s duty to provide a home separate from that of his own family, where his family is unpleasant, unkind or hostile to the wife, but the same reasoning also leads to the unavoidable conclusion that it is also his duty, when he can, to establish his home *900 sufficiently remote from the home of his family so as to remove whatever hostile or unkind influences that this proximity might cause. (Emphasis oars.) Delsa v. Raymond, 126 La. 126, 52 So. 240; Geisinger v. Conners, 130 La. 922, 58 So. 815; Verret v. Koelmel, 162 La. 277, 110 So. 421. In this connection see 38 A.L.R. 338 et seq., 47 A.L.R. 687.’ ”
See also Gann v. Pfluger, 194 La. 885, 195 So. 345; Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707; Rogers v. Rogers, 239 La. 877, 120 So.2d 462.
Appellant cites Article 210 of the LSA-Civil Code and several cases in support of the principle that the wife is bound to live with her husband and follow him wherever he chooses to reside. See Latham v. Latham, 216 La. 791, 44 So.2d 870.
We are in accord with the principles set forth in this Article and this case and others which hold that ordinarily the refusal of the wife to live with her husband at the matrimonial domicile constitutes abandonment on her part, however, we recognize there are certain exceptions to this rule. Cruel treatment by the husband which renders living together unbearable constitutes justification of the abandonment by the wife.
Finding no error in the decision of the Lower Court, for the reasons assigned the judgment is affirmed.
Affirmed.