The present action is an action for separation from bed and board, instituted in August, 1894, by a husband against his wife, upon an allegation that his living with her is altogether insupportable and impossible. This condition of things is averred to have been brought about by her jealous disposition, which caused her to make his home unbearable, by her repeated, unfounded, irritating and vexatious reproaches against him, and by her constant quarrels and abuse. He averred that six or seven years prior to the institution of the present suit, matters reached such a point as to force him to leave the conjugal domicile, to which, however, he returned on a promise by his wife that she would cease quarreling *1196 and worryicg him; that this promise not being kept, he was again forced, for the same causes as the first, in the month of January, 1892, to leave the matrimonial domicile, wishing to avoid public scandal, but that none the less he had provided continuously for his wife; that he had lived apart from her since January, 1892, having no relations with her except to provide subsistence for her from month to month; that since the second separation she had declared publicly to different persons that he was keeping a mistress and living in open adultery, which was absolutely false and untrue, without any foundation in fact; that these statements were made in malice, with the knowledge that if they were believed by his employers it would result in his immediate discharge from employment, and .he was injured by such defamation of character. In a supplemental petition he fixed the dates of these charges as having been made by her at various times in 1893 and 1894, and as having been made to one Gillen and Mrs. Julia Smith and her son, Edward Smith. The defendant met plaintiff’s demand by counter allegations against him, admitting that she and her husband had had numerous quarrels, but charging that they were mostly brought about by his constant, assiduous and improper attentions to and relations with another woman, which were the subject of neighborhood gossip and comment, and had caused her great distress and unhappiness; she charged him also with unreasonable prejudice and dislike to her children by a former marriage. Assuming the position of plaintiff in reconvention she charged that her husband had, for years prior to the bringing of his suit, withdrawn without just or legal cause from the matrimonial domicile. She prayed that he be summoned, according to law, to return; and in the event of his failure so to do, she have judgment in her own favor rejecting his demand, but granting her a separation from bed and board from her husband. Defendant attempted, on the trial, to file an amended answer, in which she alleged that since the dates of the defamation alleged in his petition (the truth of which allegations she denied), plaintiff had repeatedly invited her to his rooms by letters, written from May 1, 1893, to October, 1894, and she complied with the same ¡and resumed their marital relations during said period; wherefore, ;she prayed that plaintiff’s demand be rejected and that she do have judgment against her husband for alimony for an amount not less \thanforty dollars per month.
*1197 The court refused to allow the amended answer to be filed on the ground that it was presented too late, and because its averments were in conflict with the allegations of defendant’s answer, wherein she had averred that her husband had, in January, 1892, withdrawn from the matrimonial domicile, and “ that ever since that day he had remained away and had severed his relations with defendant as man and wife.”
During the trial defendant offered to introduce a number of letters from her husband to herself at various dates betwhen May, 1893, and July, 1894, “ to show that he received his wife at that time and took her into his room — to show reconciliation ” — but on plaintiff’s objecting that defendant had averred that there was no reconciliation at that time, and that they were statements of the husband, and, therefore, inadmissible under Art. 2281 of the Civil Code, as amended, they were excluded. We find them, however, in the record, annexed to a bill of exception taken by the defendant to the ruling of the court in regard to the same.
One Adele Armant, the owner or lessee of the house at which plaintiff was residing during the period covered by these letters was permitted over plaintiff’s objections to testify to the fact that during that period defendant had visited plaintiff at his rooms and was there with him several hours on different occasions. The court permitted this fact to be shown, not to prove a reconciliation, but as tending to show the nature of the quarrels between the parties and how serious they were.
The District Court rendered judgment in favor of the plaintiff, decreeing a judgment of separation of bed and board between himself and his wife and rejecting the wife’s reeonventional demand. From that judgment defendant appealed.
The opinion of the court was delivered by
Nicholas, C. J.
We are of the opinion that in so far as plaintiff seeks to have a separation upon the ground that his wife had “ publicly defamed” him it must fail for several reasons. In the first place whatever statements were made by the defendant in respect to the relations which she asserted existed between her husband and her supposed rival were not in our opinion either wantonly or maliciously made, nor made with the intention of injuring her husband. *1198 They were made to Gillen, the brother-in-law of the plaintiff, and to Mrs. Smith and her son, who seemed to have been friends of both parties, and in the course of conversation such as parties holding close relations with each other are apt to have in discussing mutually their family affairs. There is nothing tending to show that it was either expected or desired that these conversations should be repeated to outside parties. Those which took place with the Smiths seem to have been made prior to the date fixed in plaintiff’s pleadings and in the interval between his leaving his home the first time and his return, and to have been made in connection with a request made of Mrs. Smith by the defendant to interpose her good offices toward inducing her husband to return. In Homes vs. Carrier, 16 An. 94, we said that the charge of adultery preferred by the wife against her husband to serve as the basis for a judgment of. divorce does not of itself amount to a defamation upon the failure of the former to sustain the allegation by proof. If the accusation be not wanton or malicious, although unfounded in point of fact, it can not with propriety be said that there was á public defamation.
In Bienvenu vs. Buisson, 14 An. 386, in which a wife claimed a separation from her husband, we said that it was impossible to give a defamatory intention and effect to epithets applied by a husband to his wife when no one was present but the spouses themselves, although such epithets would have had much gravity had they been uttered in the presence of a third person. Plaintiff has called our attention to the latter part of this sentence and deduces from it broader consequences than the expression justifies. Unquestionably a charge of adultery made by a husband against his wife in presence of a third person would present a question of a much graver character than the same charge would have had had it been shown to have been made by the husband to the wife in their bedchamber» but it by no means follows that such difference would consist in leading, up to a right to a separation even by a wife independently of the time, place and circumstances under which the charge was made and independently of the relations toward the parties of the person who might be present on such an occasion and the circumstances under which he was present.
In Cass vs. Cass, 34 An. 614, in which a wife assigned as a ground of complaint against her husband that he had defamed her, the court said that the argument advanced by the husband, that to constitute' *1199 defamation within the meaning of the Code the offensive epithets or words must have been uttered in public, did not meet with its sanction. That the charge of adultery against a wife by her husband made in the presence of her servants and of a visitor, or to another person at the latter’s house, as was shown in that record, did eon- ¡ titute a public defamation as contemplated by our law, for which the injured wife was entitled to the protection of the courts. The court was of the opinion that the charge as made in that particular case was under such conditions as to justify the interpositions of the court’s action in favor of the wife. We think there was no necessity to have alluded at all to the subject, as from the standpoint of a “ public defamation,” for the conduct of the husband, even if it were not a “ public defamation,” was evidently of a character such as to cause it to fall under the terms “ outrage of one toward the other ” under the other provisions of the law of separation, and to warrant the judgment in favor of the wife.
We are not inclined to designate as a “ public defamation” the utterances of a wife to a confidential friend while seeking sympathy or advice and when smarting under what she reasonably considered to be wrongs received at the hands of her husband, by neglect of herself, and indiscreet, injudicious and excessive, even if not criminal, attentions to some other woman.
In many such cases the supposed wrongs may have been exaggerated, in others purely imaginary, but we scarcely think that the wife in so acting could be charged in any of them with having “ publicly defamed ” her husband. In the case at bar we think much of the unhappiness between the parties could have been and should have been avoided by the husband by a cessation of the visits and attentions of which his wife complained — if not entirely, at least to within limits which would have restored harmony in the family. There is such a thing as avoidable unhappiness, and we think that where husband or wife appear before the court without having attempted to remove exasperating or irritating causes of dissension which were directly within their power of control, they can scarcely expect that we should relieve them from a situation from which they could easily extricate themselves. An examination'of the testimony in this case leads to the opinion that much of plaintiff’s unhappiness consists in doing what any married man might reasonably expect his wife would do under similar circumstances, and in not only *1200 failing to desist when he saw the ' consequences of his actions, but in becoming irritable, as he himself admits, by the repeated reproaches of his wife. We do not mean to intimate that there was anything wrong in the conduct of the plaintiff, but it was undoubtedly calculated, and naturally calculated, to arouse the jealousy of his wife, and to make her miserable and unhappy, and when the plaintiff saw this he should have governed himself accordingly. We think that plaintiff’s complaint of “defamation” of himself by his wife as a special ground of action finds little support under the testimony in the ease. We are of the opinion that the letters of. the plaintiff to defendant, which the latter offered in evidence, taken in connection with the testimony of Adele Armant, establish conclusively the fact that the conversations of the defendant with Gillen and with the Smiths are sought to be made to assume an importance in the case which in no manner belongs to them.
The acts of the plaintiff in writing to his wife and receiving her at his rooms, when living at Adele Armant’s house, are irreconcilable with the conduct of a man under a sense of wrong at having been publicly defamed. The expressions o'f the letters, their whole tenor, is opposed to his attaching any weight or importance to those conversations. The real grounds of complaint are plaintiffs unhappiness produced by continuing quarrels between the spouses, resulting from the jealousy of the wife, and to differences between them in regard to the latter’s children by a first marriage. This latter ground is not assigned in plaintiff’s petition, but is made very prominent in the letters we have referred to. Plaintiff succeeded in having these letters excluded. The conclusions we have reached in the case independently of them make allusions to them unnecessary; but we think they were admissible in connection with Adele Armant’s testimony, to show that plaintiff invited his wife to his rooms long after his alleged defamation by her, and that she visited him there at his solicitation, and through that fact to show (what the testimony of Adele Armant was allowed to be introduced to show) that the grievances of these parties were not of the grave and serious character which they would be taken to be if tested simply by the allegations of the parties. The plaintiff was not through these letters made to be either a witness for himself or against his wife; the letters were not go be used for his wife as containing statements therein in support of a demand made by her against him, but as matters emanating from *1201 himself to be used against himself to break down his own cause of action. Any act of the plaintiff or admission by him which would estop him, throw his demand out of court or show his demand not well founded, the defendant is entitled to prove, and she is not cut off from doing so by the circumstance that the fact is shown in or through,a letter written by the plaintiff. Though the letters we speak-of may not show an absolute reconciliation between the parties leading to a complete wiping out of all differences and to a resumption of marital relations at a common domicile, we think they do show that the advancing of “public defamation” as a substantive ground of action was an afterthought, or that it was not at the time of writing those letters considered a matter of grievance — in other words, if it ever had existed as a ground of complaint, that particular stale grievance had passed out or been stricken from the list of grievances — practically it had been forgotten if not forgiven.
- In dealing with this matter of the public defamation of the plaintiff by the defendant we have in reality disposed of the whole case, for we have already expressed the opinion that plaintiff’s conduct was of a character such as naturally to arouse the jealousy of his wife, and that he was (to an extent sufficient to cause him to fail in this action) to blame for the resulting quarrels and his own resulting unhappiness. Plaintiff contends that the wife is not authorized in this suit to claim in reconvention a separation from bed and board based upon abandonment.
The syllabus in Bienvenu vs. Buisson, 14 An. 386, is to the effect that- “ a reconventional demand on the part of defandant for a separation on the ground of abandonment is not admissible. A particular form of procedure is required by the Code for obtaining a decree of separation on that ground, and to that form the defendant must have recourse for relief.” The same matter is referred to in Jolly vs. Weber, 36 An. 678, in which the husband reconvened, praying for a separation of board on the ground of abandonment by the wife and caused, during the pendency of the suit brought by her for a separation, summons to be served upon her to return to the matrimonial domicile. Referring to defendant’s reconventional demand, the court said: “We are at a loss to appreciate the relief which defendant could possibly claim under his wife’s refusal to obey the summons, in the face of the showing that her continued absence was justified in law by the order of the court allowing her another and a *1202 different domicile. The production of the judge’s order assigning her a house to live during the pendency of the suit, and which is a matter of record, is unquestionably a sufficient answer and a justifiable showing to the summons of her husband through the court directing her to return to the latter’s domicile. The proceeding, therefore, could not give rise to a judgment sentencing her to comply with her husband’s request, and all matters connected with the alleged abandonment must .be eliminated from the cause.”
We find a decision in France to the same effect: “ Le grief resultant de ce que le mari refuse de recevoir sa femme au domicil conjugal ne serait pas recevable s’il se fondait uniquement sur ce que le mari n’aurait pas tenu compte d’une sommation a lui faite avant la signification de l’arret, qui avait rejeté une demande en separation de corps anterieurement formeé par lui.” Trib. Seine, 27 Mai, 1868, D. P. 72-1, 87-8.
In the Bienvenu case defendant was evidently seeking to obtain-a separation from bed and board on the ground of abandonment of the wife by direct proof of the abandonment administered on the trial, without having had recourse to the various summons and orders to return prescribed by the Code.
The abandonment of this case is that of the husband, and it is alleged to have antedated the bringing of plaintiff’s suit by several years. The various summons to the husband to return were made during the pendency of the present suit, in support of the reconventional demand. Our decision in this ease being a rejection of plaintiff’s demand, carrying with it a conclusion that he was not warranted in withdrawing from the matrimonial domicile, it may be claimed that we could and should now give effect to the summons made during the suit, or reject the plaintiff’s demand and leave the reeonventional demand standing for future summons. We have no right to say that plaintiff would not be willing, upon the rendition of this judgment, to become reconciled to his wife and return to her. It would be against the policy of the law that he should find himself confronted by a judgment of separation from bed and board in favor of his wife on account of abandonment, based upon neglect or refusal to return upon summons made when the propriety of his own course and the conduct of his wife was at the very time being made the subject of judicial investigation. We do uot think he should be placed, finally, in default pending the litigation, but that the summons *1203 upon him should be made only after the termination of his own suit, leaving him free to act from that time forward. We think every possible opportunity should be afforded the parties to reconcile their differences on that ground, if no other; we would not be inclined, even if it were allowable, to permit the reconventional demand to stand with a right to make new summons under it after plaintiff’s demand had been rejected. The general rule is that the main demand and that in reeonvention should be disposed of at one and the same time, and it is peculiarly proper that this rule be adhered to in this case, in which we are impressed with the idea that the parties are not really so far apart as they might appear to be.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that plaintiff’s demand be rejected. It is further ordered, adjudged and decreed that the demand in reeonvention of the defendant be dismissed as of non-suit.