20 So.2d 311

**MUDD v. MUDD.**

No. 37381.

Nov. 6, 1944.

Noble M. Chambers and H. Purvis Carmouche, both of Crowley, for defendant-appellant.

Chappuis & Chappuis, of Crowley, for plaintiff-appellee.

HIGGINS, Justice.

This is a separation from bed and board proceeding instituted by the wife against her husband on the ground of cruel treatment said to have consisted of excessive sexual intercourse accomplished with physical force. The defenses are a denial of the charges and a plea of condonation. There was judgment in favor of the plaintiff as prayed for and the defendant has appealed, strenuously insisting that the evidence is absolutely inadequate to prove the accusations.

The jurisprudence is well established that cruel treatment in any form which renders married parties living together insupportable is a legal ground for judicial separation in favor of the mistreated one.

The record shows that the parties are members of the colored race. The plaintiff was reared in Chicago, Illinois, and is fairly well educated. The defendant always lived in Louisiana and had only a third grade education. They were married on January 22, 1933, at Alexandria, La., when

he was twenty-five years of age and the plaintiff was twenty-two. Both of them were in excellent health and each weighed approximately 156 pounds. Their daughter was born on August 3, 1936 and their son was born on March 8, 1939. They have no other children and neither of them used contraceptives.

In her petition, the plaintiff alleges that her husband "* * * would force himself upon her, and, on an average of about three times a night accomplish sexual intercourse by assaults upon and in connection with her person"; and "* * * that often during the daytime her said husband would insist on, and without her consent and desire, as above alleged, accomplish the excesses detailed". On direct examination, she testified to the same effect as the allegations of the petition and sought to corroborate her testimony in the sex respect by the testimony of relatives, the Chief of Police of Crowley (their home town) and her physician, all of whom stated that she made complaints to them about the alleged unusual frequency of the sex act. However, on cross-examination when she was asked "Did you tell your lawyer that Willie Mudd would or would not have intercourse with you on an average of three times a night and sometimes in the daytime?" she answered, "I didn't say on an average, I said every night sometimes twice a night and some times in the daytime, I couldn't tell you inside a year." She admitted on cross-examination that after her return from a six weeks vacation or visit with her relatives in Chicago from August 9, 1942 to September 7, 1942 (two days before she left the defendant) she copulated with her husband twenty-two times in twenty-nine days. During that time the wife was 32 years of age and the husband, 35 years of age, and both in normal health except for her complaint of nervousness and loss of sex desire. When asked "Does that average three times a night?" she stated, "I didn't say he had sexual intercourse with me three times a night. I said he had sexual intercourse with me every night, sometimes twice a night and sometimes three times a night, but I didn't tell you how often a month or year that it was three times a night."

The family physician, plaintiff's witness, who had been consulted three or four times a year by the plaintiff, testified that she complained to him of excessive sexual indulgence by her husband on an average of three times a night, and, in addition, often during the daytime; that although he found her to be in sound physical condition, while telling him about these intimate matters, she appeared to be nervous and fidgety, which could be caused from sexual overindulgence. He says that parties who overindulge lose weight and that sex desire and capacity decrease with age. When asked if it was excessive indulgence for the spouses to copulate twenty-two times in twenty-nine days, he answered that it was not and that many normal couples over a period of years have intercourse daily without any harmful effects to their health. He also states his examination of the patient did not reveal any bruises or abrasions or marks. The doctor did not examine the husband or advise with him.

The cook who lived with the plaintiff and the defendant for more than a year, as well as relatives, testified that the couple appeared to be devoted to each other and were happy and contented and that at no time did they ever hear the husband quarrelling or fighting with his wife nor did they see him strike or mistreat her. All of the witnesses stated that he was a home man, a good father and husband, a splendid provider, and that he enjoyed an excellent reputation.

Defendant states that he weighs about 156 pounds and his wife weighs about 160 pounds; that he has had intercourse with her approximately four or five times per week. The plaintiff says she weighs about the same as when she was married, that is, about 156 pounds.

The wife admits having written her husband three letters while on a six weeks visit with her relatives in Chicago, in which she expressed herself in terms of endearment, love and affection towards him. She also admitted that she packed his suit case and kissed him goodbye when he left home on September 7, 1942, for a business trip to New Orleans, and that she did not tell him that she was about to leave him. Subsequent to the filing of the suit for separation on September 9, 1942, he visited her at her brother's home in Natchez, where he remained over night and she walked alone with him by the river and discussed his requests and entreaties for reconciliation. She also acknowledged that she kissed him. She admits that she, with her sister-in-law, visited the matrimonial domicile subsequent to the separation and ate dinner with him and rode in his automobile with him part of the way back to her sister-in-law's home and that they were still "friends." This was done, she explains, in compliance with the husband's efforts through the Catholic priest to try to reconcile them.

The only witness who testified that the husband accomplished the sex act through physical force and assaults is the wife. However, it is significant that she did not complain on that score to others but made her complaint to them solely on the ground that the defendant was unreasonable in his demands on her for copulation on an average of three times a night and often in the daytime. She states that during the last four years she never once willingly indulged her husband. She has not lost weight and the doctor found no evidence of violence or force.

It is obvious from her own testimony that she failed to prove the charges contained in the petition. Plaintiff's statement that she has lost all sex feeling for her husband is negatived by her own conduct both while living with him and after they were separated. Likewise it is clear from her physician's statement that it is reasonable and normal for a healthy couple to engage in the sex act daily over a period of years without any harmful effects to either of them. It is the marital obligation of spouses to mutually submit to the reasonable and normal sex desires of each other.

For the reasons assigned, the judgment of the district court is annulled and set

aside and it is now ordered, adjudged and decreed that the plaintiff's suit is dismissed; the defendant to pay all costs of court.