29 So.2d 581

**SAMPOGNARO v. SAMPOGNARO.**

No. 38140.

Feb. 10, 1947.

Dhu Thompson, and James T. Spencer, both of Monroe, for plaintiff-appellant.

James H. Dormon, of Monroe, for defendant-appellant.

HAMITER, Justice.

Plaintiff and defendant (husband and wife) were married on June 21, 1931, and of the union were born two children, both boys, ages ten and thirteen respectively. For more than fourteen years following the

marriage they lived together in the City of Monroe.

On or about November 3, 1945, however, the husband drove his wife to the City of Shreveport, placing her in the home of her father there, and since that time he has enjoyed the care of the children and has refused to live with her, notwithstanding her desire and efforts to return to the matrimonial domicile in Monroe.

Some few weeks after leaving his wife the husband brought this suit to obtain a judgment decreeing a separation from bed and board and awarding him the care, custody and control of the children. He alleged that over a long period of time his wife has been guilty of constant nagging and also has on numerous occasions, both publicly and privately, accused him of having carried on illicit relations with other women, "which constant nagging, unfounded charges of infidelity and cruelty towards your petitioner makes his continued living with his wife impossible, and was the cause of their separation."

Answering, defendant denied the allegations of the petition. She averred that plaintiff has refused to receive her in their home, although she has requested him often to do so. Further, she averred that his conduct in this respect, along with his having struck her on occasions, constituted cruel treatment that entitles her to a judgment of separation from bed and board, for which she prayed in reconvention. Also, she asked to be granted alimony in the sum of $125 per month and be awarded the care and custody of the children.

The district court, after trying the case on these issues, rejected the demands of both plaintiff and defendant. From the judgment both litigants are appealing.

With reference to his having driven the defendant to the home of her father in Shreveport and thereafter having refused to live with her, plaintiff testified:

"Q. Did your wife leave you? A. No, I left her.

"Q. You left her? A. Yes, sir.

"Q. Where did you go? A. Well, I had constantly told her that if she didn't cut that nagging out, and cursing me out, and bawling me out, and accusing me of doing things, I was going to take her back home—and she knew that—and she knew it the day I taken her home, and she asked me when I was coming back and I told her I didn't know, I would let her know as soon as I had made my mind up. I made my mind up and I called her long distance and told her what I was going to do.

"Q. And that is, you weren't going to live with her any more? A. · Yes, sir. * * *"

The defendant wife, who has been afflicted with a curvature of the spine since prior to the marriage, is highly nervous. About this fact, a certificate of Dr. William L. Bendel, a prominent Monroe physician, states:

"January 23, 1946.
To Whom It May Concern:

This is to certify that I have known Mrs. Russell Sampognaro about fifteen years.

She has been a patient of mine for a number of years. She has two children, ages 13 and 10, both of which were delivered by me and both of which were normal deliveries. She has raised and taken good care of these children. She · received an injury early in childhood that has left her crippled and somewhat deformed and she has been extremely nervous as long as I have known her. I have not seen her in quite some time but it is my understanding that this nervousness has become somewhat aggravated. She is 37 years of age and is also having some early symptoms of menopause.

Sgd. William L. Bendel."

According to defendant, her husband, in driving her to Shreveport, stated that she was being taken there for a rest, and that he would come back for her in a week or two. The children accompanied them on the trip but returned to Monroe with the father. In several telephone conversations held later, the husband told his wife that he was not ready to come for her; ultimately he telephoned stating that she was to stay with her father. Whereupon she and her father went to Monroe where she tried in vain to gain admittance to their home.

Defendant does not deny that she and her husband have had occasional arguments or quarrels. In fact, she says that several times they engaged in "small arguments", during which he slapped her. She does deny emphatically, however, that she constantly nagged, berated and cursed her husband or that she accused him of infidelity.

She insists that she loves her husband and children; that she has made a good home for them; and that their marriage has been the same as the ordinarily happy one. Explaining why she sought, in reconvention, a judgment of separation from bed and board, she said that her husband "asked for it first"; that she "had to answer his request"; and that if he insists she wants the judgment.

In corroboration of the testimony of the defendant her father and brothers testified that they were wholly unaware of any discord between plaintiff and defendant and that the couple always appeared to be happily married.

Those giving testimony in support of the allegations of the petition, in addition to plaintiff, were the wife of plaintiff's first cousin who lived next door, plaintiff's sister who resided some two blocks away, and the oldest son (age 13) of the litigants. All testified to defendant's constant nagging and her accusations of infidelity, just as did plaintiff. It is to be noticed, however, that another witness offered by plaintiff (his first cousin who lived next door for several years) testified that he did not know anything about "what went on" between plaintiff and his wife, or "whether they got along or not"; he was not at home much, since he went to work early and arrived home late.

▇ The record of this case fails to disclose definitely any physical mistreatment of one spouse by the other. True, defend-

ant testified that plaintiff struck her several times during "small arguments"; but her testimony in that respect is too indefinite for consideration, for she fails to name any time or place or give any details of the striking.

 Of course, cruel treatment (with which each party charges the other here) is not, under our jurisprudence, confined to physical mistreatment, abuse or injury. As said in Moore v. Moore, 192 La. 289, 187 So. 670, 671, cruel treatment "* * * can, likewise, result from mental harassment alone arising from conduct that is the 'very refinement of cruelty,' without either force or blows. * * *"

Whether or not the plaintiff, under this doctrine, has proved by a preponderance of the evidence the allegations of cruelty made in his petition is a question that addresses itself to the weight to be afforded the testimony of the witnesses. The district judge, by rejecting his demands, obviously concluded that the allegations were not supported by a preponderance of the evidence. In reaching this conclusion, we can not say that the judge manifestly erred. He observed the demeanor of the witnesses as they testified and was in a much better position to weigh their testimony than are we. His decision, under these circumstances, will not be disturbed.

Remaining for consideration is plaintiff's admitted refusal to live with his wife, an act which the latter charges is

cruel treatment. Perhaps the refusal constitutes an abandonment of the wife for which she can obtain relief under the provisions of Revised Civil Code Articles 143 and 145; but it is not cruel treatment within the meaning of Revised Civil Code Article 138. Ducros v. Ducros, 156 La. 1033, 101 So. 407; Parrish v. Parrish, 164 La. 62, 113 So. 764.

The judgment is affirmed.