38 So.2d 732

**SCHNEIDER v. SCHNEIDER.**

No. 38466.

Jan. 10, 1949.

Rehearing Denied Feb. 14, 1949.

See also 211 La. 959, 31 So.2d 176.

J. Monroe Simmons, of Covington, and Chas. J. Rivet, of New Orleans, for defendant-appellant.

Sidney W. Provensal, of Slidell and Hugh M. Wilkinson, of New Orleans, for appellee.

HAMITER, Justice.

In this action, instituted on April 26, 1946, Mrs. Louise Manion Schneider seeks a judgment against her husband, Claude W.

Schneider, decreeing a separation from bed and board between them, granting to her the permanent care, custody and control of their three minor children, and awarding alimony for the support of herself and the children.

According to the allegations of the petition herein, plaintiff and defendant were married in New Orleans on October 22, 1924, and of the marriage three children were born. In the early part of the year 1945 she sued for a separation from bed and board in the Parish of Orleans, but the suit was dismissed on an exception to the jurisdiction filed by her husband in which he showed that the matrimonial domicile was in the Parish of St. Tammany. Thereafter, specifically on June 25, 1945, she filed suit in the Parish of St. Tammany seeking the same relief. In that suit (hereinafter referred to as the former suit) she charged that her husband had been guilty of cruel treatment, outrages and excesses toward her, of such a nature as to render their living together insupportable, and she set out specific instances thereof beginning about six months after their marriage and continuing at frequent intervals until August, 1944. The former suit was tried on November 20, 1945, and judgment rendered therein in favor of her husband on November 23, 1945. On her appeal to the Supreme Court that judgment was affirmed. Decided by this court on March 18, 1946. See 209 La. 925, 25 So.2d 900.

Additional allegations of the petition in the instant suit, and on which plaintiff

primarily relies for her cause of action, are the following:

"That her husband has again been guilty of cruel treatment, outrages and excesses toward your petitioner of such a nature as to render their living together insupportable; that on the 16th day of February in the year 1946 at the premises 1236 First Street in the City of New Orleans, Louisiana, between the hours of six and eight in the evening, she and her daughter Margaret were in the kitchen preparing their dinner when her husband came into the house. Remembering that her daughter had received an invitation and call out from a carnival organization of which petitioner's husband was a member and thinking that her husband had sent same to their daughter, she told Margaret that she should thank her father which the child immediately did; that her husband permitted their daughter to thank him for the invitation and did not tell her that he had not sent it. Shortly afterward a friend of their daughter called their home and over the telephone informed her that he, the friend, had sent the invitation. After the telephone conversation the child returned to the kitchen much hurt and almost immediately thereafter she left the kitchen without saying anything and your petitioner thought the child had gone to her room. Instead the child had gone to the room in which her father was and petitioner heard her say to her father, 'Dear why did you deceive me, why did you let me think that you had sent me this invita-

tion when you knew all the time that you had not'; that her father replied, 'you are a little liar if you say that I told you I sent the invitation'; that petitioner then told her husband that he should not call their child a liar; that she had not lied to him, whereupon her said husband rushed toward her in a belligerent manner saying that she was encouraging their child to run around and that she was just like her mother, 'just a G— d— little liar'; that petitioner became alarmed and returned to the kitchen but that her husband followed her and pointing his finger in her face he said 'you are a liar and always have been and you are trying to make your children just like you, you are nothing but a low down Irish b—— and if it weren't for my money and social position you couldn't get anywhere and would not have a friend'; that while hurling these and other insults at her he was swinging his arms frantically with his fists closed, while standing close to your petitioner. Their daughter fearing that her mother might be bodily harmed asked her father to get out and leave her and her mother alone. Her husband then turned to their daughter and raising his hand, said, 'I'll beat you within an inch of your life, you nasty ungrateful little b——'. Petitioner then demanded that he leave the kitchen and stay out; that her husband then said, 'I'll fix you, your mother is breaking up everything and you'll be right on the street with her when I get finished with you, I'll sell the G— d— house and see that you both get nothing'. Becoming

alarmed for the safety of herself and her daughter, as her husband by this time had become so enraged that he was walking up and down and shouting in a loud voice, petitioner went to the telephone and called up her husband's brother, Matt, asking him to come down and take his brother out of the house so that she might avoid calling the police but her husband's brother merely laughed and hung up the telephone; that she then rang her own brother, John, asking what to do, as she was trying to avoid calling the police to her home; that while she was talking to her brother her husband continued to hurl insults at her in a loud voice and came toward her in an effort to prevent her from using the telephone; that her daughter, again fearing for her mother's safety, got a carving knife from the buffet drawer and standing by petitioner told her father not to come near her mother. That while she was talking to her brother, her husband knowing she was talking to her brother, shouted, 'that son of a b—— is too scared to come down here'. Fearing for the safety of her brother as well as herself and her child she then told her brother not to come down to her home but instead to try to locate one of her lawyers but he was unable to locate either of them. Her husband continued his tirade and insults a short while longer and then went to his room."

To the petition defendant tendered exceptions of no right and no cause of action and a plea of estoppel. On these being overruled, an answer was filed in which defend-

ant denies plaintiff's charges of cruel treatment. His prayer is that the demands of plaintiff be rejected and, in the alternative, that he be awarded the custody of their children.

After a trial of the merits there was judgment in favor of plaintiff decreeing a separation from bed and board, granting to her the permanent care, custody and control of the children, and awarding alimony. Defendant appealed. Plaintiff has answered the appeal, praying for an increase in the alimony award.

In written reasons for his judgment the district judge first analyzed the testimony given by the litigants' daughter, Margaret, who described in detail the occurrence of February 16, 1946. Continuing, he said:

" * * * The plaintiff's testimony was substantially the same as her daughter's.

"The defendant denied that he used the language attributed to him by his wife and his daughter. He further sought to minimize the occasion and said it was only a family squabble as the result of his daughter wanting a new dress to wear to the ball. He, likewise, attributed whatever difficulties he had with the daughter to previous promptings on the part of the plaintiff.

"After an analysis of all the testimony given in this case it is impossible for me to reach the conclusion that what transpired on February 16th, 1946, within this home was nothing more than a mild family disagreement. In the first place, it seems illogical that the wife would have gone to the telephone and called the defendant's brother, as well as her own brother, to come to the home in order to quiet the defendant if he had not been acting in a threatening and belligerent manner. I note further from the testimony that shortly after the call to the defendant's brother, Matt Schneider, that defendant's sister, Louise Schneider, did come to the home and went to defendant's room, where she talked with him for some time. It is logical to assume from this that the brother, Matt Schneider, called the sister and asked her to visit the home, and it is further logical to assume that he considered the argument serious enough to entreat his sister to make said visit. In addition to this, I note that the defendant admitted that his daughter, Margaret, did have a butcher knife in her hand and, certainly, the dispute must have been a serious one when the daughter, who was only seventeen years of age, considered it necessary to obtain the butcher knife in order to defend her mother. I was favorably impressed with the testimony of the daughter, Margaret, and I am of the opinion her version of what transpired on the evening of February 16th, 1946, was substantially correct. I, therefore, am of the opinion that defendant did use the language attributed to him by both the daughter and the plaintiff. I am of the further opinion that the offensive epithets which were used by the husband toward the wife in the presence of the seventeen year old daughter consti-

tute a sufficient cause for a separation from bed and board. See Dunlap v. Dunlap, 49 La. [Ann.] 1696, and 22 So. Page 929; Schmalz v. Schmalz, 146 La. 876, 84 So. 166.

"I might further add I have held many hearings in connection with the marital difficulties that have arisen between these parties and I have reached the conclusion it is impossible for them to adjust their difficulties and live together as husband and wife. To force them to do so would not only constitute a prolongation of a life of misery for both, but certainly would not afford an environment conducive to the proper rearing of the children."

Our careful study of the record does not leave us with the conviction that the trial judge manifestly erred in his announced finding of fact. As shown above a definite conflict in the evidence exists. The testimony of the plaintiff and the daughter accords with such finding and substantially supports the factual allegations of the petition, while that of the defendant is to the contrary. By reason of the conflict there has arisen a question of the veracity of the witnesses, and the trial judge, who resolved it in favor of plaintiff, was in a much better position to determine that question than are we.

But appellant urges here, to quote from the brief of his counsel, that:

"If, arguendo causa, we ignore the husband's denials, and accept the wife's version of the incident of February 16, 1946,

as absolutely correct, it does not show sufficient cause to support the judgment in her favor."

■ Separation from bed and board may be claimed reciprocally on account of excesses, cruel treatment, or outrages of one of the married persons towards the other if the ill treatment is of such a nature as to render their living together insupportable. Revised Civil Code, Article 138. And there is no rule of law requiring that there be more than one instance of cruel treatment to justify a decree of separation. Sliman v. Sliman, 155 La. 397, 99 So. 343.

■ While recognizing these principles of law, appellant's counsel contend that the incident primarily relied on herein by plaintiff—that occurring on February 16, 1946, during the pendency of the former suit in this court—merely evidenced disappointment in the marriage relation and incompatibility of temper which under our well established jurisprudence do not constitute cruel treatment and are not causes for a judicial separation, they citing Gormley v. Gormley, 161 La. 121, 108 So. 307, and Temperance v. Hermann, 191 La. 696, 186 So. 73. We are not impressed with this contention. Certain circumstances attending the incident, as pointed out by the trial judge, compel the conclusion that there occurred something more serious than a mild dispute. Thus, plaintiff sought the aid of both her brother and defendant's brother; the sister of defendant came to talk with him shortly after the telephone

call to his brother; and the daughter grasped and displayed a butcher knife in defense of plaintiff. Further, it seems appropriate to observe that in a mild dispute between a husband and wife of culture and refinement, to which class these litigants belong, one of them does not ordinarily use the vile epithets attributed to this defendant in addressing the other, particularly in the presence of their teen age daughter.

▬▬ Therefore, we approve the holding of the district court that defendant's conduct on the evening in question amounted to cruel treatment toward his wife, of such a nature as to render their living together insupportable, and furnished grounds for a separation from bed and board. Under the jurisprudence of this state cruel treatment is not confined to physical mistreatment, abuses or injury; it can, likewise, result from mental harassment alone arising from conduct that is the very refinement of cruelty, without either force or blows. Moore v. Moore, 192 La. 289, 187 So. 670, and the numerous decisions therein cited. See also Sampognaro v. Sampognaro, 211 La. 105, 29 So.2d 581. Unquestionably, that definition embraces the offending acts committed by this defendant.

Especially appropriate here is the case of Kammer v. Reed, 176 La. 1091, 147 So. 357, 358, the evidence in which showed that the husband had called the wife vile names. Observed the court:

"We feel fully justified, under the facts of this case, in maintaining the self-respect and in protecting the womanhood of the plaintiff, a lady of refinement, against such vile epithets, insults, and outrages as have been heaped upon her in this case by defendant, in his sudden fits of temper and rage.

"In our opinion, the ill treatment plaintiff has received at the hands of her husband is of such a nature as to render their living together insupportable, and to entitle plaintiff to a separation from bed and board."

▬ Of course, had this plaintiff been responsible for the commencement of the husband's conduct of which she complains, as defendant insists she was, she could not obtain the relief sought. Under our jurisprudence a husband or wife is not entitled to separation from bed and board because of cruelty if his or her conduct was such as to exasperate the other spouse and provoke the offending acts. Ducros v. Ducros, 156 La. 1033, 101 So. 407; Armentor v. Gondron, 184 La. 922, 168 So. 102. But we are not satisfied that plaintiff commenced the quarrel or that what she did and said was sufficiently provocative to justify defendant's abusive and vile language toward and ill treatment of her. After defendant had replied to the daughter "You are a little liar if you say that I told you I sent the invitation", plaintiff intervened and told the husband that he should not call their child a liar. From this it appears in the first place, that defendant started the regrettable affair by calling the daughter, a "little

liar". Secondly, it is but natural and proper for a mother to express disapproval of a remark of that kind addressed to her daughter.

 In an answer to defendant's appeal, plaintiff prays for an increase of the alimony award. The issue of alimony heretofore has been determined by this court, Schneider v. Schneider, 211 La. 959, 31 So. 2d 176, and the award made by the district court on the trial of the merits is in keeping with our conclusion. There appears no good reason at this time to again pass upon that issue.

For the reasons assigned the judgment is affirmed.

O'NIELL, C. J., does not take part.

PONDER, J., absent.

On Application for Rehearing.

PER CURIAM.

On application for rehearing counsel for appellant strenuously urge that this court in its original opinion ignores one of the issues presented in this case, wherein the principle, well settled in the jurisprudence, was urged that mutual wrongs debar both spouses from judicial separation. The court has carefully considered the issue as presented in the application, and we conclude that our decision as to that issue will not affect the decree rendered on original hearing. A rehearing is therefore denied.