LEMMON, Judge.
Norbert A. Gurtner appealed from a judgment granting a separation from bed and board to his wife.
The couple had been married for approximately 14 months when Mrs. Gurtner left their home permanently, allegedly being forced to do so because of cruel treatment by her husband which rendered their living together insupportable. No children were born of the marriage, but Mrs. Gurtner’s three year old daughter by a previous marriage resided with them.
Mrs. Gurtner filed a petition alleging specific acts of mental and physical cruelty. The husband answered and reconvened for a separation in his favor on the ground of abandonment. By judgment on a rule, alimony pendente lite at the rate of $50.00 per week was awarded.
Mrs. Gurtner eventually filed a rule for contempt and for an increase in alimony, and the husband filed a rule to decrease the award. These rules were tried along with the merits of the separation suit.
The trial court granted the separation to the wife, but decreased her alimony to $30.00 per week. The husband appealed the judgment granting the separation, and the wife answered the appeal, seeking an increase in alimony.
Mrs. Gurtner primarily alleges that her husband struck her in the face and leg without provocation on August 27, 1970. The origin of this incident was a custom established because Mrs. Gurtner desired to “get out of the house” more often. While Mr. Gurtner took her to various outings and felt he could not afford more extensive entertaining, he consented to her going out once a week with her sister or a close lady friend. Generally, Mrs. Gurtner left home about 8:00 P.M. and returned about midnight, usually going to dinner and a show. Mrs. Gurtner testified that on the day in question she had gone out earlier and stated she would return about 6:00 P.M. While with her sister, she discussed her marital problems extensively and did not return until 9:00 P.M. Her husband struck her when she entered the house, took away her car keys, and forbade her to leave the house or to use the car. Twelve days later she left the home permanently.
On the other hand, Mr. Gurtner testified that his wife had been drinking excessively on these outings and had returned in an intoxicated condition after 2:00 A.M. on one occasion prior to the night in question. On that occasion he testified that he had to break down the bathroom door because he feared that she would commit suicide. On August 27, when she was three hours later than her expected return time and had been drinking, he decided to end her outings in order to save their marriage. When she became hysterical during the ensuing argument, he slapped her to stop the hysteria.
For the next 12 days, Mrs. Gurtner contends that she was a prisoner in her own home because her husband refused to let her use the car or to give her money for a taxi or other transportation. This testimony is substantially uncontradicted. While it is fairly established that there was cohabitation during this period, Mrs. Gurtner testified that she would have left any time after the slapping incident because the overall situation was intolerable. In fact, she testified that she had left one time prior to these happenings.
Mrs. Gurtner further complained that her husband misstated his financial condition. When the same bills kept coming in the mail, she became concerned, but he refused to discuss their financial affairs despite her reasonable requests. He also refused her offer to work to assist in bring *150 ing their accounts to a current status. His yersion was that he was always truthful about his financial condition and always eventually paid the bills, but that his wife did not want to be concerned about money problems, since this had contributed to the breakup of her first marriage.
Another complaint was vile language used by her husband in the presence of her daughter and her family and friends. He contends that both spouses used rough language on occasions, but that he never directed this language at either his wife or her friends.
Finally, Mrs. Gurtner stated that despite her requests, her husband would not discuss these matrimonial problems, and she felt that she could live with him no longer. On the other hand, Mr. Gurtner testified that he suggested that they go to a marriage counselor, the last suggestion being made on the night of the slapping.
Mr. Gurtner defended the suit on the basis that all of his efforts were directed toward providing his wife and her daughter with a happy and comfortable life to the best of his ability, and that whatever he did was designed to save his marriage to the woman he loved. While the wife agreed that her husband tried in this regard, she contends that his failure to communicate with her concerning these problems drove them further apart and eventually made the problems insurmountable.
The determination of fault in a separation suit grounded on cruelty is a difficult one, because no marriage is free from hurts caused by misunderstanding, disharmony or the influence of outside pressures beyond the control of either party. Acts of commission and omission take on different meaning at different times, and the evaluation of these acts by an independent arbiter with different sensitivities than either of the spouses is even more difficult. While the arbiter concededly takes a more objective view, the determination of whether or not an act constitutes cruelty is often a subjective one.
A trial judge’s evaluation of acts of cruelty must therefore be partially objective (from his own vantage point) and partially subjective (from the vantage point of the complaining party, as the trial judge views it). The brief testimony given at trial cannot describe all of the background experiences between the spouses which leads up to this testimony, and a trial judge can only be guided by what he sees and hears on the witness stand. A reviewing court is even more remote from the actual experiences.
On appellate review of a judgment granting a separation from bed and board based on conflicting factual evidence, this court should not substitute its judgment for that of the trial judge who listened to and observed the witnesses, but rather should affirm the finding of the trial judge if there is any evidence in the record to support his conclusion. Where both sides present substantial evidence and the trial judge chooses to accept the evidence of one side and reject that of the other, we should not reverse this determination.
After hearing and observing the witnesses, the trial judge concluded that Mrs. Gurtner was entitled to a separation from bed and board on the grounds of cruelty. Upon reviewing the record, we find no manifest error in this conclusion or in the amount of the award of alimony pendente lite.
Accordingly, the judgment of the trial court is affirmed.
Affirmed.