285 So.2d 570 (1973)
Mrs. Cony PENA, wife of Donald Edward PHILLPOTT
v.
Donald Edward PHILLPOTT.
No. 5437.
Court of Appeal of Louisiana, Fourth Circuit.
November 16, 1973.
Rehearing Denied December 10, 1973.
Writ Refused February 1, 1974.
Philip P. Spencer, New Orleans, for plaintiff-appellant.
Sydney J. Parlongue, Philip R. Riegel, Jr., New Orleans, for defendant-appellee.
Before REDMANN, LEMMON, JJ., and BAILES, J. Pro Tem.
REDMANN, Judge.
Plaintiff wife appeals from a judgment which rejected her demand and granted her husband's reconventional demand for a separation from bed and board.
Each spouse charged and testified to ill treatment, and in addition the husband charged abandonment by the wife by locking him out of the family home (the house was a wedding gift from her father). The trial judge's reasons placed more credence in the husband's testimony and, noting the undisputed lockout, found "the wife was at *571 fault in failing to let her husband return to the matrimonial domicile."[1]
We are not able to evaluate the credibility of the parties as was the trial judge. However, just as the lockout was undisputed, the husband's refusal during almost ten years to engage in sexual intercourse with the wife was testified to by her and not denied by him. This behavior (independent of other cruelties the trial judge more or less disbelieved) justified both the wife's earlier, more conservative action of moving into another room, and also the final lockout. Furthermore, persistent refusal of sexual union, in the absence of consent or sickness or grave fault on the other spouse's part, is perhaps the basest of marital cruelty and outrage. We hold the unjustified, persistent denial of sexual intercourse constitutes cruel treatment and outrage, within C.C. art. 138(3), of a nature to render living together insupportable.
The trial judge noted agreement with the husband's counsel's argument that "disappointment in sex isn't cause for a divorce" and thus ignored this circumstance. There have been expressions which may be interpreted as supporting that argument, but we find no case in Louisiana in which in fact a separation on grounds of denial of conjugal rights has been either granted or refused.
In Temperance v. Herrmann, 191 La. 696, 186 So. 73 (1938), the wife sued for separation asserting, among other grounds, "that they had not lived together as man and wife for the last three years." But, the court noted, 186 So. at 78, "the wife admits that they occupied separate rooms by mutual consent and that she would have refused his requests for indulgence if any had been made."[2] (Emphasis added.) It is that contextstarkly different from oursin which the court repeats the formula of Gormley v. Gormley, 161 La. 121, 108 So. 307, 308 (1926), that "disappointment in the marriage relation and mere incompatibility of temper are not causes * * *." Approximately the same phrase is repeated in Schneider v. Schneider, 214 La. 759, 38 So.2d 732, 735 (1949). But in neither Gormley nor Schneider was sexual behavior at issue.
Allegedly excessive frequency of sexual intercourse was entertained by the court as a possible ground in Mudd v. Mudd, 206 La. 1055, 20 So.2d 311 (1944). Separation was refused not because "disappointment in the marital relation" is no ground: to the contrary, the court asserted that "cruel treatment in any form which renders married parties living together insupportable is a legal ground * * *." However, the court concluded the frequency etc. was not injurious to plaintiff and, normal coitus being a marital obligation, was therefore in fact not cruel treatment.
We conclude that the question whether persistent, voluntary refusal of sexual intercourse is ground for separation has not previously been decided in Louisiana and we thus explain at some length our conclusion.
Marriage entails the agreement of the parties to share bed, as well as board and (ordinarily) material acquisitions. Mutual fulfillment of reasonable sex desires is a marital obligation; Mudd v. Mudd, supra. It is precisely the agreement to an abiding sexual relationship which characterizes marriage and which must be recognized, in the ordinary case, as a prime motive of both the parties for entering marriage.
*572 Thus a spouse who unjustifiably declines sexual union breaches the marriage agreement in its most delicate and intimate fundamental aspect. Probably isolated instances of unjustified refusal must be borne as mere imperfections of humanity. But a studied rejection in this exquisitely sensitive relationship of the spouses must be deemed cruel treatment and outrage and, when the refusal is persistent, it must be deemed "ill-treatment * * * of such a nature as to render their living together insupportable," C.C. art. 138(3), when the refused spouse is of such a disposition that in fact the living together becomes no longer supportable.
The "excesses, cruel treatment or outrages" of art. 138(3) need not be physical violence, since "conduct may be the very refinement of cruelty, without either force or blows"; Olberding v. Gohres, 107 La. 715, 31 So. 1028, 1029 (1902).
"[A]ny unjustifiable conduct on the part of either husband or wife which so grievously wounds the mental feelings of the other, or such as in any other manner utterly destroys the legitimate objects and ends of matrimony, constitutes cruelty, although no physical or personal violence may be inflicted or threatened.
"[I]f it be true we are possessed of social, moral and intellectual notions, with wants to be supplied, with susceptibilities of pain and pleasure, if they can be wounded and healed, as well as the physical part, with accompanying suffering and delight, then we think that conduct which produces perpetual social sorrow may well be classed as cruelty and entitle the sufferer to relief." Krauss v. Krauss, 163 La. 218, 111 So. 683, 685-686 (1927).
Nor does Parrish v. Parrish, 164 La. 62, 113 So. 764 (1927), oblige us to deem the persistent, unjustified refusal of sex not "cruel treatment" in art. 138(3)'s meaning because denial of sex is a concomitant of "abandonment". Parrish reasoned that a declaration one spouse no longer loved the other "may be cruelty" but could not be "cruel treatment" since abandonment (necessarily?) expresses a non-verbal declaration of no love and thus abandonment would equally constitute cruel treatment. But, Parrish opined, this would make "imbecility" of abandonment's requirement of months of summonses (C.C. art. 145 prior to amendment by Acts 1958, No. 82), if abandonment as cruel treatment would authorize immediate judgment of separation. Thus neither abandonment nor a verbal no-love declaration could be "cruel treatment."[3] Citing Parrish, Sampognaro v. Sampognaro, 211 La. 105, 29 So.2d 581 (1947), recited that a refusal to reside with the spouse may be abandonment, but not "cruel treatment". The latter case poses no conflict with our holding here, since refusal to reside with the spouse is but another name for abandonment.
Parrish does pose an apparent conflict, in that deprivation of sexual relations is implied by abandonment (more necessarily than is a declaration of no love). However, the denial in abandonment differs from the refusal here. When one party has in fact abandoned the other (meaning, art. 143, "withdrawn himself or herself from the common dwelling * * * and constantly refused to return * * *"), it would be unreasonable to say that the absence of sex due to not living together makes living together insupportable: evidently any insupportability was due to some other, prior cause. The immediate deprivation caused by abandonment would not in our view constitute cruel treatment sufficient for judgment of separation because of the then lack of persistence of refusal. Furthermore, the denial due to *573 abandonment does have a remedy in the suit on grounds of abandonment.
Since the spouses' agreement in marriage includes sexual love (subject, of course, to reasonable counter-indications such as sickness etc.), there must be some remedy available to the person deprived, by a spouse's unjustified refusal, of this fundamental aspect of marriage and source of marital happiness. The spouse thus deprived should not be condemned to a life of celibacy because that was not the marriage bargain. Nor should the deprived spouse be forced to give the depriving spouse grounds for separation, and even then depend on that spouse's will as to whether or not the deprived spouse could ever remarry. (While R.S. 9:301 does afford a remedy by allowing no-fault divorce after two years living separate and apart [not in the same house; Hava v. Chavigny, 1920, 147 La. 330, 84 So. 892], our Civil Code must be interpreted without reference to this much later legislation.)
The French law has the same wording as our 1825 Civil Code art. 138 French text's "exces, sevices ou injures graves", which we translate "excesses, cruel treatment or outrages". The French decisions deem voluntary and persistent refusal of normal sexual intercourse an injure grave, i. e. an "outrage", whether the refusal is of consummation of the marriage (Planiol, Civil Law Treatise, I, No. 1169 [La.Law Inst. trans.]; Planiol et Ripert, Traite Pratique de Droit Civil Francais, II, No. 525) or, as in our case, of later sexual union (Planiol et Ripert, II, No. 526).
Here the wife's testimony of almost ten years of sexual deprivation is uncontradicted. The husband did not attempt to justify his refusal, to blame it on prior behavior by the wife. The fussing he testified of, and the lockout, were subsequent to his fulfilled declaration of "no more marital relations". The wife's disposition was evidently such that this deprivation became intolerable to her.[4]
The trial judge evidently disregarded the sexual denial in weighing the wrongs of the spouses. Spouses equally at fault are not entitled to a judgment based on fault, Callahan v. Callais, 224 La. 901, 71 So.2d 320 (1954); but a spouse whose fault is comparatively lesser is entitled, Eals v. Swan, 221 La. 329, 59 So.2d 409 (1952).
Taking into account the sexual denial alone, one must conclude that the husband's fault far outweighs the wife's fussing about the relative lack of money (compared to her family's situation in Nicaragua) and (seldom) cursing (on which occasions, if started by the wife, the husband joined in).[5]
*574 The judgment insofar as it decrees a separation from bed and board is affirmed but insofar as the separation was granted in favor of the husband it is reversed and rendered in favor of the wife, and the husband's demand is dismissed, at the community's cost.
JULIAN E. BAILES, J. pro tem., concurs in the result.
NOTES
[1] We note that prior to the amendment of C.C. art. 143 by Acts 1958, No. 154, abandonment could not be the basis of a reconventional demand; Ashton v. Grucker, 48 La.Ann. 1194, 20 So. 738 (1896). See Pascal, Louisiana Family Law Course, pp. 104 and 101, offering the view that there must still be proof of failure to return "even after the plaintiff's original suit has been dismissed." We do not here reach this problem.
[2] The court added that the husband's abstinence was due to the wife's decision to have no more childrena decision the court said she had no right to make unilaterally.
[3] Compare Planiol's view, Civil Law Treatise (La.Law.Inst. trans.) I, No. 1158(1), that although other specifically-named offenses (e. g., adultery, criminal condemnation) are included within "injuries" (in Louisiana, "outrages"), "The only advantage growing out of mentioning them specifically in the law is that the courts were thus deprived of their inherent right of using their judicial discretion."
[4] The wife (whose native tongue is not English) testified "he has accusing me for foolish things, fussing at him, but that wasn't the problem, the problem was our life, our marriage. He always was trying to make me feel like a bad woman and bad talk and ignorant and stupid, but I didn't have a husband, that's the problem, that was the problem. I was sweet, I beg him, I cry to him, I pray I could have him, those things there nothing, problem was my marriage, my life, and I don't know how I can live without my husband, alone. Q. Well, your husband was there every day, wasn't he? A. But he didn't pay me attention, he didn't act like a husband should, never. He swear when the boy was born no more relation, marital relations, no more children. Q. Do I understand then that your husband, Mr. Phillpott, that he didn't want to have any sexual relationship with you, is that what you're saying? A. Yes, he told me no more children. Q. And that's your whole complaint, isn't it? A. Well, you know, that's the base of matrimony. Q. And that's the basis of your suit, that's what you're complaining here this morning about, isn't it? A. That's right. I can't live, you know, without my man, it's not normal and so I did."
[5] We note that we have not considered the testimony of a psychiatrist insofar as it related to the husband. The trial judge erred in admitting the testimony over the husband's objection. Although not brought to the judge's attention, R.S. 13:3734 (enacted by Acts 1968 No. 499, § 1) now expressly prohibits examination of a physician in a civil action without the consent of the patient (with exception not pertinent). Earlier contrary cases, such as Moosa v. Abdalla, 248 La. 344, 178 So.2d 273 (1965), are no longer controlling.