297 So.2d 704 (1974)
Alice Martin MARANTO, Plaintiff-Appellee,
v.
Maurice A. MARANTO, Defendant-Appellant.
No. 9905.
Court of Appeal of Louisiana, First Circuit.
June 28, 1974.
Dissenting Opinion July 3, 1974.
Warren L. Mengis, Baton Rouge, for defendant-appellant.
James B. Thompson, III, Baton Rouge, for plaintiff-appellee.
Before SARTAIN, BAILES and VERON, JJ.
SARTAIN, Judge.
This suit was instituted by Mrs. Alice Martin Maranto (appellee) against her husband, Maurice A. Maranto (appellant), for a legal separation on the grounds of cruel treatment and constructive abandonment. The defendant filed a general denial to the charges leveled against him by his wife and reconvened for a separation in his favor on the grounds of cruel treatment and abandonment. The trial judge, without assigning oral or written reasons, rendered judgment in favor of the plaintiff on the main demand and against the defendant on the reconventional demand, from which judgment defendant has appealed. We reverse.
The record reflects that the parties had been married for thirty years when they separated and had reared ten children. *705 During the first twenty-six years of their marriage, it could be considered ideal in every respect. However, some four years prior to their separation on July 10, 1973, the appellant choked appellee. His explanation is that on this occasion his wife refused to have sexual relations with him and he lost his temper. From that time on she has shared a bedroom with one of their children and has continued to refuse to have marital relations with her husband. The second incident of alleged physical cruelty occurred approximately a year before the couple separated. Appellee was reclining in a chair, presumably asleep, when appellant passed by and pinched her on the toe, whereupon plaintiff called him a bastard. Appellant retaliated by slapping her. Appellee arose and struck her husband in the stomach and a pushing contest ensued.
It is appellee's basic contention that she has refused to have marital relations with appellant because she is fearful that he might do her bodily harm. Further, in support of her allegations of cruelty, she states that appellant has constantly accused her of being mentally ill and in need of a psychiatrist, that he would constantly pinch her as he passed in the home, and that he told everyone within earshot that she was in need of psychiatric treatment. She explained that she left the matrimonial domicile on July 10, 1973, when her husband was in New Orleans at a business meeting and did so because she was fearful for her safety if she endeavored to move while he was present. Appellant's version is that he cannot explain why after twenty-six years of an ideal marriage that his wife would decline to have marital relations with him. He readily admitted that he choked her some four years previous but that he immediately apologized and did everything possible to seek her forgiveness. In response to the pinching and alleged general harassment, he claims that he had affectionately pinched his wife through the entire existence of the marriage and that it was not in an effort to harm, threaten, or aggravate her. He freely admitted that he had discussed his suspicions of appellee's mental condition with members of her side of the family as well as with his own relatives and close friends. He further freely admitted that he told his wife on numerous occasions during the past four years that if she did not love him she was free to leave.
Our close examination of the record leads us to but one conclusion and that is for some unexplained reason one night four years ago appellee declined appellant's sexual overtures and that from this moment on their personal relationship has deteriorated. The record does not support a finding that appellant would, under normal circumstances, physically injure appellee. On the other hand, once being rejected and being relegated to a separate bed, appellant's conduct has not been such as would induce his wife to resume marital relations. Though he claims that his "affectionate" pinching was nothing new and that his discussions with persons outside the home concerning his wife's mental illness reflected his deep concern for his wife, they did more to alienate her affection towards him than to achieve the desired result.
The first act of violence, having occurred approximately four years prior to the separation, has long since been condoned by appellee by her continued residence in the matrimonial domicile. This incident, however, can be used in corroboration with subsequent acts of violence so as to show justification for one's apprehension for their personal safety. It appears to us that the second incident of alleged physical cruelty, i. e., the toe pinching, etc., was a draw.
We must also view appellant's conduct, namely, his accusations relating to appellee's mental condition, as very serious. This must be coupled with the fact that his actions towards her, while not seriously physically abusive, were most aggravating. The charge of mental illness made repeatedly and to numerous persons is, in itself, a grievous one.
*706 We are of the opinion that had either party to this litigation relented in the wrongs claimed by the other, that their marriage would not have deteriorated to the point of no return. In essence, we find mutual fault.
Having found mutual fault, the question for resolution is whether or not the fault on the part of either one is more grievous than that of the other so as to entitle the party "lesser" at fault to a judgment of separation. Eals v. Swan, 221 La. 329, 59 So.2d 409 (1952). In balancing the faults of each party as above set forth, we cannot determine that one is greater than the other. Admittedly, "persistent refusal of sexual union, in the absence of consent or sickness or grave fault on the other spouse's part, is perhaps the basest of marital cruelty and outrage." Phillpott v. Phillpott, 285 So.2d 570 (4th La.App., writs refused, 1974). Conversely, the persistent acts of agitation complained of by the appellee added oil to a troubled fire that did not permit tempers to cool, or an otherwise tense situation to calm down in the normal course of day to day living.
Our courts have consistently held that when the husband and wife are equally at fault, neither party can obtain a separation or divorce. Phillpott v. Phillpott, supra; O'Neill v. O'Neill, 196 So.2d 669 (1st La.App., 1967); Davis v. Davis, 258 So.2d 138 (1st La.App., 1972), and Wood v. Wood, 227 So.2d 656 (3rd La.App., 1969).
Accordingly, for the above reasons, the judgment of the district court in favor of the appellee, Mrs. Alice Martin Maranto, and against the appellant, Maurice A. Maranto, is reversed and set aside. Further, judgment is rendered herein in favor of the defendant in reconvention, Alice Martin Maranto, and against the plaintiff in reconvention, Maurice A. Maranto, dismissing defendant's reconventional demand. The costs of these proceedings are assessed against defendant, Maurice A. Maranto, as head and master of the community.
Reversed and rendered.
VERON, J., dissents and will assign reasons.
VERON, Judge (dissenting).
I respectively disagree with the majority holding in this case. The majority, after finding that appellant choked appellee when she, for some unexplained reason, refused to have sex with the appellant, found that since appellee continued to reside in the same house for four years, but in a different bedroom, she condoned the choking act of violence. They further held that the persistent refusal of appellee to have sexual relations with her husband after the choking incident rendered her mutually at fault in the breakup of the marriage.
The majority agreed with the trial court that the appellant was at fault and I agree in this respect.
The record reflects that the parties had been married for twenty-six years and had ten children, when the choking incident occurred. Several years later appellant slapped appellee when she cursed him. After the choking incident, appellee refused to have sexual relations with appellant. She testified that she was afraid of him and he admitted that she is apparently afraid of him. Appellee also testified, without contradiction, that the reason she did not leave appellant before then was because she was not financially able.
The majority stated that "for some unexplained reason one night four years ago appellee declined appellant's sexual overtures and that from this moment on their personal relationship has deteriorated".
There is nothing in the record to say that appellee refused to have sexual relations with appellant for the first twenty-six *707 years of marriage. The record does show that appellee had a hysterectomy. There is nothing in the record to rebut the fact that the refusal to have any further sexual relations after the choking incident stemmed from any other reason than the act of choking.
Appellant bases his cause of action for a separation on the refusal of his wife to have sexual relations with him. The record does show that she refused because of an act of violence on her and that she continues to be afraid of him. The majority states that the "record does not support a finding that appellant would, under normal circumstances, physically injure appellee". Since the record supports the fact that appellee is afraid of appellant, whether appellant would or would not injure her, who are we to say that under these circumstances, a wife, who is afraid of her husband, must submit or be blamed for the breakup of the marriage.
"The law governing this case is La.Civil Code art. 138:
"Separation from bed and board may be claimed reciprocally for the following causes:
"(3) On account of habitual intemperance of one of the married persons, or excesses, cruel treatment, or outrages of one of them towards the other, if such habitual intemperance, or such ill-treatment is of such a nature as to render their living together insupportable;
"The cruel treatment referred to above is not confined to physical abuses, but may result from mental harrassment as well, if it renders the living together of the parties insupportable. McVay v. McVay, 276 So.2d 926 (La.App. 1st Cir. 1973).
"In the case of Gurtner v. Gurtner, 258 So.2d 148, 150 (La.App. 4th Cir. 1972), the court stated:
"On appellate review of a judgment granting a separation from bed and board based on conflicting factual evidence, this court should not substitute its judgment for that of the trial judge who listened to and observed the witnesses, but rather should affirm the finding of the trial judge if there is any evidence in the record to support his conclusion ..."
`... It is well settled that in the area of domestic relations much discretion must be vested in the trial judge, and particularly on evaluating weight of evidence to be resolved primarily on the credibility of witnesses. Sampognaro v. Sampognaro, 211 La. 105, 29 So.2d 581 (1947).' Blackman v. Blackman, 253 So.2d 672 (La.App. 2nd Cir. 1971).
In the case of Canter v. Koehring Company, La., 283 So.2d 716 (1973), with Justice Tate as the author of the opinion, the court stated:
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts."
*708 Not only do I find that there is a reasonable factual basis for the trial court's finding, I also am in complete agreement that the appellant was the party whose fault broke up a successful twenty-six year marriage.
For these reasons I respectfully dissent.