McBRIDE, Judge.
Plaintiff has appealed from the judgment rendered by the trial court insofar as it dismisses her suit for a separation from bed and board on the ground of desertion and also insofar as said judgment awards her husband on his reconventional demand a separation from bed and board from her on the ground of cruel treatment.
The parties were married in New Orleans in 1935 and established the matrimonial domicile in Jefferson Parish where they were residing when this .suit was filed in the month of November 1958. When married the wife was 20 and the husband 48, so at the time of this suit her age was 43 and his 71. Two sons were born of their marriage, now both of age.
The wife charges her husband deserted her on October 19, 1958. The facts are that on October 2, 1958, the husband moved into the “milk shed,” which is a separate building in the rear of their dwelling, where he remained for about 17 days; then on October 19, 1958, he left the prem *162 ises entirely to live with his daughter, issue of a previous marriage.
He claims justification for leaving his wife, contending that living with her was insupportable due to his wife’s cruel treatment of him. In his reconventional demand for a separation from bed and board he charges her with repeated acts of cruelty, abuse and mental harassment. He testified that during the past four years she never prepared his meals except on occasions when she would cook red beans which she would give to him for as many as three days straight. He is not working but has an income from building and loan association investments, and claims he supported his wife by giving her $18 per week for food and that he paid all bills. He testified that in September of 1956 because he had loaned money to one of his sons, his wife became incensed and choked him and tore his clothing, and then grabbed a 13-pound sledge hammer intending to strike him with it and would have done so had his son, Melvin, not taken the hammer from his mother. Defendant also claims his wife never made up his bed, refused to keep the house clean, wash his clothes, or allow him to watch television. He states he has not occupied the same bedroom with his wife for the last four years because she refused to let him enter; that she repeatedly told him he stunk and was disgusting to look at.
From the witness stand the wife made denial of most of these charges. She denied he gave her $18 every week and said the amount would range between $6 and $18 per week, and with reference to the charge she did not cook his meals she said:
“A. I cooked for what he provided. The funds he provided, I cooked for him.
“Q. What did you cook for him? A. According to what he provided. Tf he provided for three meals a day, he got three meals. If he provided for only one, he got only one.
“Q. What did he give you a week? How much a week did he give you? A. It varied.
* * * * * *
“Q. During 1958, how much money did he give you to run the house? A. Some weeks Eighteen ($18.00) Dollars; some weeks Twelve ($12.00) Dollars; some weeks Six ($6.00); some weeks nothing.”
With reference to the sledge hammer incident she testified her husband attempted to strike her and that when she raised her hand to defend herself, he caught hold of her by the neck and that he only thought she intended to pick up the sledge hammer but that she never touched it. The testimony of both parties shows that Melvin, their son, was present when the incident occurred, but he is now in military service stationed in the Azores Islands, and, of course, could not be present as a witness. The wife denied she kept the door to her bedroom locked and said her husband had access to the room whenever he desired. She denied refusing to wash his clothes but she states she would not wash them with her own because the husband allowed a pet dog to sleep on his bed.
The only witness other than the parties was plaintiff’s sister who testified plaintiff maintained a clean house; that she was present when the husband moved his belongings to the milk room which occurred without incident. This testimony is of no assistance to the court.
The trial judge who saw and heard the husband and wife testify believed the statements of the former and stated in his reasons for judgment the wife was “at fault in causing the separation.”
The only question that this appeal could possibly pose for our consideration is whether the finding of fact made by the trial judge that the wife was at fault in the separation is so erroneous and unsupported by evidence as to warrant reversal *163 by us. Our careful reading of the record satisfies us that the trial judge had every reason and every right to make the above determination from the evidence that was produced before him.
It is true the cruel treatment with which the wife is charged extended over a period of four years before culminating in the separation, but we do not think that because the husband continued to live in the same house with his wife there was condo-nation or reconciliation between the parties. It was merely forbearance on his part. It is well settled that the forbearance of a wife in enduring cruel treatment of the husband should not be construed as a reconciliation barring her action for separation from bed and board. New v. New, 186 La. 1017, 173 So. 748; Articles 152 and 153, LSA-Civ. Code; Lynch v. Lynch, 138 La. 1094, 71 So. 195; Balfe v. Balfe, 165 La. 283, 115 So. 489, and Terrell v. Boarman, 34 La.Ann. 301. It will be noted that the holdings in the above cases were that whenever the wife endured cruel treatment the same should not be construed as a reconciliation, but we think that the same rule should apply with reference to a husband. The statutory rules regarding reconciliation of the parties are embodied in LSA-C.C. arts. 152 and 153, and the provisions make no distinction as between husband and wife and the rule, of course, must be applicable to both spouses.
Excepting the sledge hammer incident occurring in 1956, there is no showing by the husband that his wife ever struck him or was guilty of physical mistreatment. But even if we eliminate said incident, which occurred two years before the separation, from all consideration, we think there remain sufficient grounds for a separation from bed and board. The above detailed mental harshness and harassment on the part of the wife would, under our jurisprudence, constitute cruel treatment. However, we do not mean to say that because there is no corroboration for the husband’s testimony regarding the alleged attempt to strike him with the sledge hammer that we believe the incident did not take place. This comment is made solely because it is argued so strongly on behalf of plaintiff that because there was no corroboration the husband has not proven the incident by a preponderance of evidence.
It was stated in Moore v. Moore, 192 La. 289, 187 So. 670, 671:
“Cruel treatment, under the jurisprudence of this state, is not confined to physical mistreatment, abuse, or injury, but can, likewise, result from mental harassment alone arising from conduct that is the ‘very refinement of cruelty,’ without either force or blows. * * *»
See, also, Wendling v. Aucoin, 214 La. 361, 37 So.2d 819, and Sampognaro v. Sampognaro, 211 La. 105, 29 So.2d 581.
The chief contention of appellant is that the reconvenor did not prove his case by a preponderance of evidence because only the parties themselves testified and that the testimony of one is as good as that of the other. We can only again comment that disputations between married persons usually take place behind closed doors and they are not ordinarily given to airing their differences in the presence of other persons, and in matters of this nature the court is usually called upon to adjudicate the case on the basis of the testimony given by the spouses themselves.
We are aware of no law or jurisprudence to the effect that the unsupported testimony of a party in a divorce or separation suit as against the unsupported testimony of the other party may not constitute a preponderance of the evidence if believed by the trier of the case. The rule is the same as prevails in other civil cases. In 32 C.J.S. Evidence, § 1021, p. 1051, under the heading “What Constitutes Preponderance,” we find:
“By a preponderance of evidence is meant simply evidence which is of *164 greater weight, or more convincing, than that which is offered in opposition to it. * * * ”
Our jurisprudence is to the effect that in a case such as we have before us where the decision must hinge upon the veracity of witnesses, the judgment appealed from will not be disturbed unless there is manifest error therein. In Vinot v. Vinot, 239 La. 587, 119 So.2d 474, 475, there was hopeless conflict between the testimony of the wife and the husband. The Court said:
“Accordingly it will be seen that the husband’s and the wife’s testimony is in hopeless conflict, and although other witnesses testified, they gave no testimony which could resolve this conflict. As the issue is one of fact, this court will not disturb the finding of the trial judge on the question of fault unless that finding is shown by the record to be manifestly erroneous. Fletcher v. Fletcher, 212 La. 971, 34 So.2d 43; Kendrick v. Kendrick, supra [236 La. 34, 106 So.2d 707].”
It was pointed out in Sampognaro v. Sampognaro, supra, that:
“Whether or not the plaintiff, under this doctrine, has proved by a preponderance of the evidence the allegations of cruelty made in his petition is a question that addresses itself to the weight to be afforded the testimony of the witnesses. * * *” [211 La. 105, 29 So.2d 583.]
The manifest error rule prevails in this type of case to the same extent as in other civil matters. In Clay v. Clay, 221 La. 254, 59 So.2d 180, 181, the Supreme Court said:
“* :|: * js weij established in the jurisprudence that, in the absence of manifest error, we will not reverse the judgment of the trial court upon a controversial and disputed question of fact. Recent divorce cases recognizing this rule are Arnold v. Arnold, 186 La. 323, 172 So. 172; Rayner v. Rayner, 216 La. 1099, 45 So.2d 637; Moser v. Moser, 220 La. 295, 56 So.2d 553. After reading the testimony adduced at the trial of this case, we cannot say that the trial judge committed manifest error in dismissing plaintiff’s suit.”
In Wojahn v. Soniat, 211 La. 562, 30 So. 2d 431, which was a suit for separation from bed and board, the Court said:
“ * * * In all cases where there is conflicting testimony as to any fact, the lower court is in a better position to pass on the credibility of the witnesses because it has opportunity to observe the manner in which the testimony is given. We will not set aside the finding of the lower court on a question of fact where there is no manifest error. * * *»
In Arnold v. Arnold, 186 La. 323, 172 So. 172, 173, we find this language:
“As to whether the plaintiff or the defendant is entitled to a decree of separation from bed and board, the case presents only questions of fact; which are, for the most part, dependent upon the veracity of the witnesses. We therefore defer very largely to the opinion of the district judge *
See, also, Schneider v. Schneider, La. App., 129 So.2d 42.
We have carefully read and analyzed the testimony and fail to find anything in the husband’s statements which would tend to detract from his veracity, and by the same token we fail to find anything in the wife’s testimony which would lead us to a conclusion that what she said is even as worthy as his testimony. We point up her testimony with reference to the sledge hammer. She stated her husband only thought she was going to strike him with this implement. Why, we ask, should she even allude to the sledge hammer if it did not play a part in the particular incident which had happened two years prior to the sepa *165 ration? Then again there is the charge the wife would not wash the husband’s clothes. She did not say she was willing to or did wash his clothes. What she said was she was unwilling to place her clothes along with his in the washing machine. All she intimates is she was willing to wash his clothes separately from hers. We think that if she had washed her husband’s clothes, it does not seem reasonable he would have complained whether they were washed separately or not. Her testimony alone would have the tendency to lead one reading it to the belief she did not attempt to wash her husband’s clothes. Her testimony also would lead one to believe she had no interest in cooking her husband’s meals. It is logical to assume that if the funds she received from him were insufficient as she claims to provide for regular meals, she would have made complaint concerning his dereliction. But she does not say she ever complained. All she did was to give him what she thought he deserved which to our minds demonstrates clearly the contempt she evidently entertained towards him. There is no error that we can discern in the conclusions of the trial judge on the questions of fact presented to him, and we are at a loss to know on what basis the judgment appealed from should be reversed. The manifest error rule should be applicable.
The disparity in the ages of the parties undoubtedly had much to do with their marital difficulties, but we should not concern ourselves too much with this circumstance. Regardless of his age, the wife has no legal right to neglect, abuse, harass, and ridicule her husband in the manner above set forth to such an extent as would render their living together insupportable and force him to quit the matrimonial domicile. The wife in this case was guilty of cruel treatment towards her husband.
The judgment allowed the wife the sum of $200 for her attorney's fee which we think adequate. There is no reason for increasing the amount.
The judgment appealed from is affirmed.
Affirmed.